John C. Hueston, State Bar No. 164921
jhueston@hueston.com
Douglas J. Dixon, State Bar No. 275389
ddixon@hueston.com
Adam Olin, State Bar No. 298380
aolin@hueston.com
HUESTON HENNIGAN LLP
620 Newport Center Drive, Suite 1300
Newport Beach, CA 92660
Telephone:     (949) 229-8640
Facsimile:     (888) 775-0898

Attorneys for Defendant
BECCELA'S ETC., LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CISCO SYSTEMS, INC., et al., | Case No. 5:18-CV-00477-BLF |
| Plaintiffs, | |
| vs. | **DEFENDANT BECCELA'S ETC., LLC'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| BECCELA'S ETC., LLC, | Judge:          Hon. Beth Labson Freeman |
| Defendant. | Hearing Date: August 2, 2018<br>Time:          9:00 a.m. |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on August 2, 2018 at 9:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Beth Labson Freeman, United States District Court Judge, in Courtroom 3 - 5th Floor of the United States District Court, Northern District of California, 280 South 1st Street, San Jose, CA 95113, Defendant Beccela's Etc., LLC ("Defendant") will and hereby does move this Court for entry of an Order dismissing the claims for (a) federal trademark infringement, (b) federal unfair competition, (c) California common law trademark infringement, (d) California statutory misleading and deceptive advertising, (e) inducing breach of contract, and (f) conversion, in the Complaint filed by Plaintiffs Cisco Systems, Inc. and Cisco Technology, Inc. ("Plaintiffs").

This motion to dismiss is brought pursuant to Rule 12(b)(6) and Rule 12(f) of the Federal Rules of Civil Procedure on the ground that Plaintiffs' claims fail as a matter of law or are subject to strike.  Cisco fails to state a claim for trademark infringement, either under federal or common law, fails to describe its conversion claim with particularity as required by Federal Rule of Civil Procedure 9(b), fails to state a claim for induced breach of contract, and does not have statutory standing to pursue its claims for false advertising.  In addition, all of Cisco's allegations related to so-called "discount fraud," "corporate theft," or violations of the Penal Code are subject to strike.

This motion to dismiss is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, all papers and records on file herein, and such other matters as may be presented to the Court at or before the hearing on this Motion.

DATED:  March 29, 2018

Respectfully submitted,
HUESTON HENNIGAN LLP

*/s/ John C. Hueston*
John C. Hueston
Attorneys for Defendant
BECCELA'S ETC., LLC

5278601

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................. 3

III.  LEGAL STANDARD .......................................................................................... 5

IV.   ARGUMENT ...................................................................................................... 6

A.    Cisco's Claim For Trademark Infringement Must Fail ............................ 6

    1.    The First Sale Doctrine Bars Cisco's Trademark Infringement
       Claim............................................................................................. 6

       a.    Cisco's Unilateral Post-Sale Warranty Regulations
          Are Not A Material Difference Under the Lanham Act ................ 7

       b.    Cisco Has Failed to Adequately Allege That Providing
          Country-Conforming Power Cords Creates a Material
          Difference .................................................................................... 9

B.    Cisco's Claim For Conversion Must Fail ............................................... 10

    1.    Cisco's Conversion Claim Is Subject To Rule 9(b)..................... 10

    2.    Cisco's Conversion Claim Is Not Alleged With Particularity.... 11

    3.    Cisco Fails To Allege Any Wrongful Act By BecTech ............... 13

C.    Cisco's Claim For Inducing Breach Of Contract Must Fail ................... 14

    1.    Cisco Does Not Allege Active Inducement to Breach the
       ICPA Or Causation ...................................................................... 14

    2.    Cisco Does Not Allege Damages For Induced Breach Of The
       ICPA ............................................................................................ 15

    3.    Cisco Does Not Allege Breach Of Any Other Contract ............. 16

D.    Cisco Lacks Standing To Pursue Its Lanham Act False Advertising
    Claim....................................................................................................... 17

E.    Cisco Lacks Standing To Pursue Its California False Advertising
    Claim....................................................................................................... 18

F.    The Court Should Strike Cisco's Conclusory Allegations of Fraud....... 19

    1.    The Court Should Strike Cisco's Allegations Of Discount
       Fraud ........................................................................................... 19

    2.    The Court Should Strike Cisco's Penal Code § 532 Allegation... 21

BECCELA'S ETC., LLC'S MOTION TO DISMISS

1

<u>TABLE OF CONTENTS</u> (cont.)

2

<u>Page</u>

3       3.      The Court Should Strike Cisco's Allegations Regarding
                "Potentially Stolen Transceivers".................................................................21
4
    V.      CONCLUSION.................................................................................................22
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BECCELA'S ETC., LLC'S MOTION TO DISMISS

5278601

1
# TABLE OF AUTHORITIES

2
Page(s)

3
**Cases**

4
*578539 B.C., Ltd. v. Kortz,*
  2014 WL 12572679 (C.D. Cal. Oct. 16, 2014).................................................. 18

5

6
*Allwaste, Inc. v. Hecht,*
  65 F.3d 1523 (9th Cir. 1995) ........................................................................... 12

7
*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)................................................................................ 2, 5, 9, 20

8

9
*Augustine v. Trucco,*
  124 Cal. App. 2d 229 (1954) ........................................................................... 15

10
*Au-Tomotive Gold Inc. v. Volkswagen of Am., Inc.,*
  603 F.3d 1133 (9th Cir. 2010) ...................................................................... 6, 8

11

12
*Barnes v. AT&T Pension Ben. Plan-Nonbargained Program,*
  718 F. Supp. 2d 1167 (N.D. Cal. 2010) ..................................................... 19, 20

13
*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)........................................................................................... 5

14

15
*BITH, LLC v. Mikail,*
  2012 WL 654698 (Cal. Ct. App. Feb. 28, 2012) ............................................ 13

16
*Bobbleheads.com, LLC v. Wright Brothers, Inc.,*
  259 F. Supp. 3d 1087 (S.D. Cal. 2017)........................................................... 18

17

18
*Bottoni v. Salli Mae, Inc.,*
  2011 WL 3678878 (N.D. Cal. Aug. 22, 2011) ............................................... 20

19
*Cisco Sys., Inc. et al. v. Infinity Micro Computer, Inc. et al.,*
  Case No. 2:14-cv-02961 (N.D. Cal. Apr. 17, 2014)........................................ 18

20

21
*Cisco Sys., Inc. et al. v. Server Supply.com, Inc.,*
  Case No. 3:18-cv-00478-SK (N.D. Cal. Jan. 22, 2018) .................................. 18

22
*Cisco Sys., Inc. et al. v. Shattor et al.,*
  Case No. 3:18-cv-00480-LB (N.D. Cal. Jan. 22, 2018) .................................. 17

23

24
*Code Rebel, LLC v. Aqua Connect, Inc.,*
  2013 WL 5405706 (C.D. Cal. Sept. 24, 2013) ................................................ 20

25
*Collin v. Am. Empire Ins. Co.,*
  21 Cal. App. 4th 787 (Cal. Ct. App. 1994)...................................................... 13

26

27
*Creative Mobile Techs., LLC v. Flyware Software, Inc.,*
  2016 WL 7102721 (N.D. Cal. Dec. 6, 2016).................................................... 19

28

TABLE OF AUTHORITIES (cont.)

Page(s)

*Dichter-Mad Family Partners, LLP v. United States*,
  707 F. Supp. 2d 1016 (C.D. Cal. 2010) ........................................................... 20

*Dolan v. PHL Variable Ins. Co.*,
  2017 WL 4812308 (M.D. Pa. Oct. 25, 2017) .................................................... 13

*Dryden v. Tri-Valley Growers*,
  65 Cal. App. 3d 990 (1997) ............................................................................. 14

*Enlink Geoenergy Servs., Inc. v. Jackson & Sons Drilling & Pump, Inc.*,
  2010 WL 1221861 (N.D. Cal. Mar. 24, 2010) .................................................. 19

*Ergowerx Intern., LLC v. Maxell Corp. of Am.*,
  18 F. Supp. 3d 430 (S.D.N.Y. 2014) .................................................................. 6

*Fantasy, Inc. v. Fogerty*,
  984 F.2d 1524 (9th Cir. 1993), *judgment rev'd on other grounds*, 510 U.S.
  517 (1994)........................................................................................................ 21

*Frustuck v. City of Fairfax*,
  212 Cal. App. 2d 345 (Cal. Ct. App. 1963) ...................................................... 15

*GEC US 1 LLC v. Frontier Renewables, LLC*,
  2016 WL 4677585 (N.D. Cal. Sept. 7, 2016) .................................................... 10

*Haley v. Macy's, Inc.*,
  263 F. Supp. 3d 819 (N.D. Cal. 2017)............................................................... 12

*Hokto Kinoko Co. v. Concord Farms, Inc.*,
  738 F.3d 1085 (9th Cir. 2013) ....................................................................... 7, 9

*Huf Worldwide, LLC v. Wal-Mart Stores, Inc.*,
  2017 WL 766794 (S.D. Cal. Feb. 28, 2017)..................................................... 8, 9

*Iberia Foods Corp. v. Romeo*,
  150 F.3d 298 (3d Cir. 1998) .............................................................................. 6

*Imperial Ice Co. v. Rossier*,
  18 Cal. 2d 33 (1941) ......................................................................................... 14

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) .......................................................................... 10

*Knepp Kraft Constr. Co. v. Interstate Restoration Grp.*,
  2008 WL 11338127 (C.D. Cal. Apr. 21, 2008) ................................................. 20

*Kythera Biopharms., Inc. v. Lithera, Inc.*,
  998 F. Supp. 2d 890 (C.D. Cal. 2014) .............................................................. 10

*Lauren v. Lending Tree, LLC*,
  2011 WL 3242008 (Cal. Ct. App. July 29, 2011)............................................... 19

1

<u>TABLE OF AUTHORITIES</u> (cont.)

2

<u>Page(s)</u>

3

*Lazar v. Grant,*
    2017 WL 4805067 (C.D. Cal. June 22, 2017) ............................................................ 10, 12

4

5

*Lee v. Hanley,*
    61 Cal. 4th 1225 (2015) ...................................................................................................... 13

6

*Lexmark Int'l v. Static Control Components, Inc.,*
    134 S. Ct. 1377 (2014) ........................................................................................................ 17

7

8

*Maximum Availability Ltd. v. Vision Solutions, Inc.,*
    2010 WL 11508470 (C.D. Cal. Dec. 16, 2010) ................................................................ 16

9

*MetroPCS v. SD Phone Trader,*
    187 F. Supp. 3d 1147 (S.D. Cal. 2016) .............................................................................. 14

10

11

*Moore v. Apple Inc.,*
    2015 WL 7351464 (N.D. Cal. Nov. 20, 2015) .................................................................. 15

12

*NEC Elecs. v. CAL Circuit Abco,*
    810 F.2d 1506 (9th Cir. 1987) .................................................................................... 6, 7, 8

13

*Osawa & Co. v. B&H Photo,*
    589 F. Supp. 1163 (S.D.N.Y. 1984) ..................................................................................... 8

14

15

*People v. Wooten,*
    44 Cal. App. 4th 1834 (1996) ............................................................................................ 21

16

*Quelimane Co. v. Stewart Title Guaranty Co.,*
    19 Cal. 4th 26 (1998) ......................................................................................................... 15

17

18

*Russo v. M/T Dubai Star,*
    2010 WL 1753187 (N.D. Cal. Apr. 29, 2010) .................................................................. 20

19

*Sanford v. MemberWorks, Inc.,*
    625 F.3d 550 (9th Cir. 2010) ............................................................................................. 12

20

21

*Sebastian Int'l, Inc. v. Longs Drug Stores Corp.,*
    53 F.3d 1073 (9th Cir. 1995) .................................................................................... 1, 6, 7, 8

22

*Shamblin v. Berge,*
    166 Cal. App. 3d 118 (Cal. Ct. App. 1985) ...................................................................... 14

23

24

*Singh v. Google, Inc.,*
    2018 WL 984854 (N.D. Cal. Feb. 20, 2018) .................................................................... 18

25

*Soo Park v. Thompson,*
    851 F.3d 910 (9th Cir. 2017) ............................................................................................... 9

26

*Spates v. Dameron Hosp. Ass'n,*
    114 Cal. App. 4th 208 (Cal. Ct. App. 2003) ..................................................................... 13

27

28

5278601

<u>TABLE OF AUTHORITIES (cont.)</u>

Page(s)

*Stutzman v. Armstrong,*
    2013 WL 4853333 (E.D. Cal. Sept. 10, 2013) ................................................ 20

*T.T. ex. rel. Susan T. v. Cty. of Marin,*
    2013 WL 308908 (N.D. Cal. Jan. 25, 2013) ....................................................... 19

*Taiwan Semiconductor Mfg. Co. v. Tela Innovations, Inc.,*
    2014 WL 3705350 (N.D. Cal. July 24, 2014) ................................................... 19

*TechnoMarine SA v. Jacob Time, Inc.,*
    905 F. Supp. 2d 482 (S.D.N.Y. 2012) ................................................................. 9

*Toshiba America Information Systems, Inc. v. Advantage Telecom, Inc.,*
    19 Fed. App'x 646 (9th Cir. 2001) ...................................................................... 8

*United States v. Mayer,*
    560 F.3d 948 (9th Cir. 2009) ............................................................................... 8

*Upper Deck Authenticated, Ltd. v. CPG Direct,*
    971 F. Supp. 1337 (S.D. Cal. 1997) .................................................................... 8

*Vess v. Ciba-Geigy Corp., USA,*
    317 F.3d 1097 (9th Cir. 2003) ................................................................. 5, 10, 11

*White v. California,*
    2012 WL 5844881 (C.D. Cal. Oct. 3, 2012) ..................................................... 21

*Wynn v. Nat'l Broadcasting Co.,*
    234 F. Supp. 2d 1067 (C.D. Cal. 2002) ............................................................. 15

**<u>Statutes</u>**

15 U.S.C. § 1125(a) ............................................................................................. 17, 18

Cal. Bus. & Prof. Code § 17500 ........................................................................... 18, 19

Cal. Bus. & Prof. Code § 17535 ................................................................................ 18

Cal. P. Code § 532 .................................................................................................... 21

**<u>Rules</u>**

Fed. R. Civ. P. 9(b) ........................................................................................... passim

Fed. R. Civ. P. 12(f) ........................................................................... 2, 19, 21, 22

**<u>Other Authorities</u>**

Trademarks and Unfair Competition (5th ed.) § 25:41 ............................................... 8

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I. INTRODUCTION

3    Plaintiffs Cisco Systems, Inc. and Cisco Technology, Inc. (together, "Cisco") – two of the

4 world's most powerful technology companies – bring this lawsuit not to right a wrong but in an effort

5 to wield improper control over the purchase and sale of Cisco goods once they enter the stream of

6 commerce.  Under the guise of laws designed to ensure customers receive genuine goods, Cisco seeks

7 to redefine the word "genuine" to mean only those goods sold by purchasers that Cisco selects.

8 Defendant Beccela's Etc., LLC ("BecTech") legally purchases genuine Cisco goods on the open

9 market and resells them to customers.  While Cisco alleges that BecTech does so in violation of state

10 and federal law, BecTech's only fault is having the temerity to sell Cisco products without Cisco's

11 permission.  Cisco's conclusory Complaint broadly fails to state a claim, and nearly all of its claims

12 should be dismissed.

13    *First*, Cisco's claim for trademark infringement runs afoul of the "first sale" doctrine, under

14 which a trademark holder may not use the Lanham Act to prohibit or control the resale of genuine

15 products bearing its trademarks.  *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073,

16 1074 (9th Cir. 1995).  Under long-established precedent, *anyone* is authorized to resell goods that

17 they have legally acquired, even against the express wishes of the trademark holder.  The right of a

18 trademark holder to control how its products diffuse through the market is therefore extinguished

19 after it sells the product.  Trademark holders have long chafed against the important pro-consumer

20 protection embodied by the first sale doctrine, and this lawsuit is merely the latest attempt by a

21 trademark holder to control who can and who cannot sell its products.  Cisco concedes, for the

22 purpose of its infringement claim, that the Cisco products BecTech sells are genuine—*i.e.*, Cisco

23 actually manufactured them, and the Cisco marks they bear are authentic.  Instead, Cisco alleges that

24 the Cisco products BecTech sells are "materially different" from those sold by its "Authorized

25 Resellers."  But its allegations are insufficient to state a claim under the Lanham Act.  Accordingly,

26 the Court is required by controlling precedent to reject Cisco's attempt to circumvent the first sale

27 doctrine.

28

*Second*, Cisco's claim for conversion —which alleges that BecTech is complicit in so-called "discount fraud"—falls well short of Federal Rule of Civil Procedure 9(b)'s heightened pleading standard.  Cisco does not identify *any* misrepresentations by BecTech.  And its allegations regarding misrepresentations made by others suffer from an almost impressive lack of detail: Cisco does not identify any speakers, the time or place of any misrepresentation, the substance of any misrepresentation, or the reason for any misrepresentation's falsity.  This claim, and the "discount fraud" allegations on which it rests, are therefore subject to dismissal.

*Third*, Cisco does not state a claim for induced breach of contract.  It alleges that BecTech came into possession of Cisco products and services that were sold, at some earlier point, by a Cisco Authorized Reseller who was forbidden from selling them to an entity like BecTech.  But Cisco fails to allege, as it must, either that BecTech affirmatively induced any Cisco Authorized Reseller to breach or that Cisco's contract with its Authorized Reseller would have been performed but for BecTech's interference.  Indeed, it does not allege that BecTech even bought any product or service *from an Authorized Reseller*, acknowledging that BecTech may have done so from an unnamed "intermediary" instead.  This does not state a claim for induced breach under controlling law.

*Fourth*, Cisco lacks standing to pursue its false advertising claims under California's False Advertising Law and the Lanham Act.  It is required to allege facts plausibly suggesting that any false advertising caused consumers to withhold trade from it, in the case of the Lanham Act, or caused it to lose money or property, in the case of California's False Advertising Law.  It does neither.

*Finally*, setting aside Cisco's failure to state a claim for fraud or conversion, its allegations regarding discount fraud—including its gratuitous allegation that BecTech violated criminal law, (Dkt. 1 ["Compl."] ¶ 104)—are subject to being stricken under Federal Rule of Civil Procedure 12(f).

At its core, Cisco's Complaint is a string of legal conclusions in search of discovery.  But the Federal Rules do not permit Cisco to pursue its "sue first, find factual allegations later" strategy.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (noting that Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions").  Accordingly, for the foregoing reasons, and as set forth in further detail below, the Court should dismiss Cisco's claims for (1) trademark infringement (under both federal and common law), (2) conversion, (3) induced

BECCELA'S ETC., LLC'S MOTION TO DISMISS

5278601

1  breach, (4) false advertising under the Lanham Act, and (5) false advertising under California law.

2  In addition, the Court should strike all of Cisco's allegations relating to fraud, theft, and violations

3  of the California Penal Code.

4  **II.     BACKGROUND**

5        Cisco is a large manufacturer of information technology products and services.  (Compl.

6  ¶ 13.)  BecTech is a supplier of new and bulk high-end data center equipment, including equipment

7  manufactured by Cisco.

8        In an effort to wield as much control as possible over every sale—and resale—of its products,

9  Cisco only sells products to entities with which it enters into highly regulated contractual relations.

10  Cisco calls these entities "Authorized Resellers," and alleges that they are allowed to sell Cisco

11  products and services only to "end users"—*i.e.*, the final consumers of a product—rather than

12  resellers or distributors, like BecTech.  (Compl. ¶ 26.)  Upset that not all of its Authorized Resellers

13  have acquiesced to or honored its onerous terms, Cisco has threatened and now brought suit against

14  resellers and distributors like BecTech in order to improperly attempt to destroy the secondary market

15  for its products.

16        **Induced Breach.** Cisco's Complaint alleges that some of its Authorized Resellers, unhappy

17  with Cisco's restrictions, have elected to sell Cisco products and services to non-end users, including

18  BecTech.  But rather than suing its Authorized Resellers for breaching their agreements, Cisco has

19  sued BecTech, claiming, in largely conclusory fashion, that BecTech induced the alleged breaches.

20  The only specific instance that Cisco can muster, however, involves the sale of a Cisco service

21  support contract, called a "SMARTnet contract," by a German Authorized Reseller.  (Compl. ¶¶ 51-

22  52.)  But other than allege that BecTech resold the SMARTnet contract that had originally been sold

23  to this unnamed Authorized Reseller, Cisco fails to provide any details on how BecTech induced a

24  breach.  Indeed, Cisco never alleges that BecTech ever even communicated with the Authorized

25  Reseller, conceding that BecTech may have purchased the SMARTnet contract "through an

26  intermediary."  (*Id.* ¶ 51.)

27

28

**Trademark Infringement.** Cisco also alleges that BecTech has resold Cisco products or services that infringe on Cisco's trademarks.  With only one exception,[1] Cisco does not allege that the products are counterfeit, that they were not actually manufactured by Cisco, or that they bear counterfeit marks.  Instead, it argues that the genuine Cisco products sold by BecTech are "materially different" from those sold by its Authorized Resellers in two ways: (1) BecTech allegedly substitutes a U.S. power cord for the power cord accompanying a Cisco product sold overseas; and (2) Cisco refuses to honor warranties for products sold by non-Authorized Resellers like BecTech.  (Compl. ¶¶ 53-60.)  Cisco does not allege that any power cord BecTech has ever included with a Cisco product is inferior to a cord Cisco has included.  Cisco further concedes that the goods sold by BecTech lack warranty access not because they have been modified, but for the sole reason that they were not sold by Cisco's chosen partners.

**False Advertising.** Cisco also takes exception with certain advertising by BecTech.  It alleges, for example, that BecTech's website states that BecTech has "developed powerful partnerships with industry leading suppliers." (Compl. ¶ 31.)  Although BecTech's advertising does not mention Cisco, and although Cisco is not a "supplier," Cisco suggests that this statement implies that BecTech is a "member of Cisco's channel sales organization." (*Id.*)  Cisco also complains that BecTech has sold certain products as "new" or "factory sealed" when in fact BecTech has opened the box containing the product and power cord and switched out the power cord.  (Compl. ¶ 68.) (Cisco does not allege that BecTech ever modified a product itself in any respect.)

**Discount Fraud.** Cisco contends that discount fraud occurs when an Authorized Reseller submits a request for an especially large discount for a specific end user.  Rather than selling the discounted product to that end user, however, the Authorized Reseller proceeds to sell it to someone else, defrauding Cisco in the process.  (*See* Compl. ¶ 29-30.)

---

[1] Cisco alleges that BecTech sold it an allegedly counterfeit "switch" in April 2016.  (Compl. ¶¶ 35-38.)  While Cisco's allegations may be sufficient to survive a motion to dismiss, BecTech vigorously disputes its liability and intends to defend itself against Cisco's false charge of counterfeiting. BecTech is committed to eradicating the sale of counterfeit products.  After Cisco brought the particular switch at issue to BecTech's attention in the summer of 2017, BecTech voluntarily revealed the name of the vendor who had sold the switch to BecTech.  For its cooperation, BecTech was rewarded with seven months of silence, and then this lawsuit.

1   Cisco alleges that BecTech sold six products in January 2017—two switches and four

2   transceivers—that may have been procured through discount fraud.  (Compl. ¶¶ 39-43; 47-50.)  Cisco

3   evidently believes this is so because the two switches were "traced back to high discount deals in

4   China" that involved special discounting for specific Chinese end users.  (*Id.* ¶ 42.)  Cisco alleges

5   that the switches were delivered in China in December 2016.  (*Id.*)  The transceivers, likewise, were

6   apparently sold originally in discount deals for Chinese or American end users.  (*Id.* ¶¶ 48, 50.)  Cisco

7   conspicuously does not say when these transceivers were originally delivered.

8   Cisco does not identify either the end users or the Authorized Resellers involved in the earlier

9   sales of the switches and transceivers.  Nor does it allege any connection between the unnamed

10   Authorized Resellers and BecTech, or any misrepresentation made to Cisco regarding those products,

11   let alone identify the speaker and time of the misrepresentation.  Instead, apparently based on the fact

12   BecTech resold products that were initially sold by Cisco to an Authorized Reseller at a discount,

13   Cisco concludes that BecTech must be "involved in discount fraud schemes" and committing "willful

14   corporate theft."  (Compl. ¶ 1.)

15   **III.    LEGAL STANDARD**

16   To state a claim upon which relief can be granted, a plaintiff must plead "enough facts to state

17   a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007),

18   and she must plead those facts with enough specificity "to raise a right to relief above the speculative

19   level," *id.* at 555.  "A claim has facial plausibility when the plaintiff pleads factual content that allows

20   the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

21   *Iqbal*, 556 U.S. at 678.  A court is "not bound to accept as true a legal conclusion couched as a factual

22   allegation[.]"  *Id.* at 678 (internal quotation marks omitted).  "Threadbare recitals of the elements of

23   a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

24   Claims sounding in fraud must "state with particularity the circumstances constituting fraud."

25   Fed. R. Civ. P. 9(b).  Accordingly, when claiming fraud, a plaintiff must state the "who, what, when,

26   where, and how of the misconduct charged" in order to defeat a motion to dismiss.  *Vess v. Ciba-*

27   *Geigy Corp., USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

28

1   **IV.     ARGUMENT**

2       **A.     Cisco's Claim For Trademark Infringement Must Fail**

3       The fundamental premise underlying Cisco's trademark infringement claim is that a

4   trademark holder has the power to choose who can and cannot sell goods bearing that mark.

5   However, the Lanham Act was passed in order "to prevent sellers from confusing or deceiving

6   consumers about the origin or make of a product, which confusion ordinarily does not exist when a

7   genuine article bearing a true mark is sold." *NEC Elecs. v. CAL Circuit Abco*, 810 F.2d 1506, 1509

8   (9th Cir. 1987).  BecTech's sale of genuine Cisco goods does not implicate that concern.  Instead,

9   Cisco's claim is nothing more than an attempt to restrict the sale of its goods to partners it selects, a

10  proposition already rejected in this circuit and others.

11          *1.     The First Sale Doctrine Bars Cisco's Trademark Infringement Claim*

12      It is well-established that the Lanham Act does not prohibit the sale of genuine goods by

13  individuals other than the trademark holder.  The Ninth Circuit has "recognized the principle that

14  'the right of a producer to control distribution of its trademarked product does not extend beyond the

15  first sale of the product.'"  *Au-Tomotive Gold Inc. v. Volkswagen of Am., Inc.*, 603 F.3d 1133, 1136

16  (9th Cir. 2010) (quoting *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1074 (9th

17  Cir. 1995)); *see also Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 301 n.4 (3d Cir. 1998) ("[A]

18  trademark owner's authorized initial sale of its product into the stream of commerce extinguishes the

19  trademark owner's rights to maintain control over who buys, sells, and uses the product in its

20  authorized form.").  The rule is based on the purpose of the Lanham Act: "to prevent sellers from

21  confusing or deceiving consumers about the origin or make of a product, which confusion ordinarily

22  does not exist when a genuine article bearing a true mark is sold." *NEC Elecs.*, 810 F.2d at 1509;

23  *see also Ergowerx Intern., LLC v. Maxell Corp. of Am.*, 18 F. Supp. 3d 430, 450 (S.D.N.Y. 2014)

24  ("Thus, a distributor who resells trademarked goods without change is not liable for trademark

25  infringement.").  Courts have thus guarded against holders attempting to exert control beyond the

26  first sale of genuine trademark-bearing products.

27      The Ninth Circuit's decision in *Sebastian Int'l, Inc.* is illustrative.  There, the trademark

28  holder, a manufacturer of hair care products, attempted to limit the distribution of its products to

BECCELA'S ETC., LLC'S MOTION TO DISMISS

5278601

1   certain authorized dealers.  53 F.3d at 1074.  The defendant, a drug store, sold legally acquired goods

2   bearing the plaintiff's trademark, despite not being an authorized dealer.  *Id.*  The court found no

3   infringement because "[n]othing in the record suggests that Longs did anything more than stock and

4   resell genuine Sebastian products lawfully acquired on the open market under the true SEBASTIAN

5   Sebastian trademark—the precise conduct excluded from the Lanham Act by the 'first sale' rule."

6   *Id.* at 1076.  The court noted that if plaintiff's theory of infringement were correct, "a producer could

7   avoid the first sale rule and invoke the assistance of the courts in controlling downstream distribution

8   of its trademarked products." *Id.*

9          BecTech's use is no different.  BecTech legally acquires genuine Cisco products and offers

10  them for sale.  Notwithstanding certain vague, unspecific references to frauds committed by unnamed

11  third parties (*see infra*), Cisco's trademark infringement claim does not allege that BecTech has done

12  otherwise.  Cisco's claim is instead that it has the power to restrict the resale market of its products

13  to only certain authorized resellers.  This contention, which would eviscerate the first sale doctrine,

14  has been soundly rejected by the Ninth Circuit.

15         Cisco can thus only state a claim for infringement if the Cisco goods BecTech sells are not

16  genuine, or—in the parlance of Lanham Act case law—"materially different" from the identical

17  goods Cisco itself sells.  *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1093 (9th Cir.

18  2013).  It cannot do so.

19                     a.      Cisco's Unilateral Post-Sale Warranty Regulations Are Not A

20                             Material Difference Under the Lanham Act

21         Cisco first alleges that its products' "entitlement to warranty services" is a material difference

22  between its goods and those sold by BecTech.  (Compl. ¶ 56.)  However, Cisco may not wield its

23  ability to withhold warranty and support services from genuine products it has already put into the

24  stream of commerce to circumvent the first sale doctrine.

25         It is well-established in the Ninth Circuit that a difference in access to the trademark holder's

26  "servicing and warranties" does not constitute a material difference for purposes of an infringement

27  claim.  *See NEC Elecs.*, 810 F.2d at 1508 (granting summary judgment despite evidence that some

28  customers "mistakenly thought" products were protected by a trademark holder's "servicing and

1    warranties"); *Sebastian Int'l, Inc.*, 53 F.3d at 1076 (recognizing *NEC* as holding that the first sale

2    doctrine applied "despite the district court's finding" of confusion over warranty access).  The Ninth

3    Circuit therefore "precludes an infringement claim based on voided warranties alone."   *Huf*

4    *Worldwide, LLC v. Wal-Mart Stores, Inc.*, 2017 WL 766794, at *2 (S.D. Cal. Feb. 28, 2017).[2]

5           Accepting Cisco's allegations as sufficient would destroy the first sale doctrine and permit

6    trademark holders to maintain total control over the sale of their products at all stages.  The purpose

7    of the doctrine is to "limit[] the producer's power to control the resale of its product, while ensuring

8    that the consumer gets exactly what the consumer bargains for, the genuine product of the particular

9    producer."  *Au-Tomotive Gold Inc.*, 603 F.3d at 1136 (internal quotations omitted).   However,

10   allowing Cisco to unilaterally transform a product that was indisputably "genuine" when it left the

11   factory and entered the stream of commerce, into a "non-genuine" product would give Cisco

12   unfettered control over who may, and may not, sell branded goods.  The Lanham Act does not permit

13   this.  *See* McCarthy on Trademarks and Unfair Competition (5th ed.) § 25:41 ("[A] markholder may

14   no longer control branded goods after releasing them into the stream of commerce.") (quoting *Osawa*

15   *& Co. v. B&H Photo*, 589 F. Supp. 1163, 1173 (S.D.N.Y. 1984)); *see also Upper Deck Authenticated,*

16   *Ltd. v. CPG Direct,* 971 F. Supp. 1337, 1342 (S.D. Cal. 1997) (rejecting plaintiff's claim that it could

17   prevent defendant's sale of trademark goods on the secondary market as "absurd, [because it] would

18   grant [the plaintiff] the contractual power to destroy the market value of all preexisting, lawfully

19   obtained collectibles").  The Ninth Circuit has specifically rejected such an attempt.  *See Sebastian*

20   *Int'l, Inc.*, 53 F.3d at 1076 ("It is the essence of the 'first sale' doctrine that a purchaser who does no

21   more than stock, display, and resell a producer's product under the producer's trademark violates no

22

23   _____

     [2] The Ninth Circuit's decision in *Toshiba America Information Systems, Inc. v. Advantage Telecom,*
24   *Inc.*, 19 Fed. App'x 646 (9th Cir. 2001), does not compel the opposite result.  It is an unpublished
     circuit case which may not be cited as precedent.  Ninth Circuit Rule 36-3; *Huf Worldwide, LLC*,
25   2017 WL 766794 at *2 n.6 (noting that "the Court can't rely on that case").  Even if the Court were
     to consider it, the facts are distinguishable.  *Toshiba* involved goods which the defendant physically
26   altered such that they differed from goods sold by the trademark holder.  *Toshiba Am. Info. Sys., Inc.*,
     19 Fed. App'x 646, at *1 (involving the sale of "goods bearing Toshiba's trademark that lack serial
27   numbers").  Finally, *NEC Electronics* and *Sebastian International* remain good law notwithstanding
     the conclusory memorandum opinion in *Toshiba*.  *See United States v. Mayer*, 560 F.3d 948, 963
28   (9th Cir. 2009) ("[A] three-judge panel may not overrule the decision of another panel in the absence
     of intervening Supreme Court case law that is clearly irreconcilable.") (internal quotations omitted).

1    right conferred upon the producer by the Lanham Act."). The law does not allow a trademark holder

2    to pick and choose who can sell its products by using warranty coverage to unilaterally decide which

3    products are "genuine" based solely on who sells them.

4                    b.    Cisco Has Failed to Adequately Allege That Providing Country-

5                          Conforming Power Cords Creates a Material Difference

6            Cisco also alleges that the swapping of power cords to correspond to the country in which the

7    product is sold constitutes a "material alteration." (Compl. ¶ 43.) However, not every difference is

8    "material" for purposes of the Lanham Act. "The key question is whether a consumer is likely to

9    consider a difference relevant when purchasing a product." *Hokto Kinoko Co.*, 738 F.3d at 1093.

10   Cisco has failed to allege that a difference in power cords is a relevant consideration to consumers.

11           The total sum of Plaintiff's allegations on this issue is that Defendant used "a different power

12   cord than the one included by Cisco when it manufactured the product." (Compl. ¶ 43.) On that sole

13   basis, Plaintiff "asserts on information and belief that having all original Cisco components" is

14   "relevant to consumers' decision [sic] about whether, and from whom, to purchase Cisco products."[3]

15   (Compl. ¶ 56.) Rule 8 requires that a plaintiff explain *why* a difference is material, not merely allege

16   that it is so. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action,

17   supported by mere conclusory statements, do not suffice."). Courts therefore routinely grant motions

18   to dismiss where the plaintiff fails to allege *why* a particular difference is relevant to consumers. *See,*

19   *e.g.*, *Huf Worldwide, LLC*, 2017 WL 766794, at *2 ("Nor has Huf offered the Court a sufficient

20   statement of how the [alleged material difference] is likely to cause confusion or why consumers

21   consider the [difference] a relevant difference."); *TechnoMarine SA v. Jacob Time, Inc.*, 905 F. Supp.

22   2d 482, 491 (S.D.N.Y. 2012) (dismissing an infringement claim where the complaint "fail[ed] to

23   address why differences in packaging are material").

24

25

26   _____

27   [3] Plaintiff must moreover plead the facts which provide the basis for its belief that a difference in
     power cords is material, despite invoking the hoary last resort of all pleaders, "on information and
28   belief." *See Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017).

                                                                              (Continued...)

1    Cisco has alleged that the goods sold by BecTech are different.  It has not alleged that the

2    goods are *materially* different, which is the crux of an infringement claim.  The Complaint is notably

3    absent of any allegation that the power cords included in the products sold are inferior.  Indeed, given

4    that Plaintiff admits it has possession of the allegedly infringing products, that it cannot allege a

5    material difference between the cords is telling.[4]

6       **B.    Cisco's Claim For Conversion Must Fail**

7            *1.    Cisco's Conversion Claim Is Subject To Rule 9(b)*

8        Cisco's claim for conversion sounds in fraud.  Federal Rule of Civil Procedure 9(b) requires

9    a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake."

10   "Averments of fraud must be accompanied by the who, what, when, where, and how of the

11   misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Vess*,

12   317 F.3d at 1106) (internal quotation marks omitted).  Rather than simply setting forth "the neutral

13   facts necessary to identify the transaction," a plaintiff alleging fraud must describe a specific

14   misrepresentation, identify who made it and when, and then explain "what is false or misleading

15   about [the] statement, and why it is false." *Vess*, 317 F.3d at 1106.  This rule both protects defendants

16   from being smeared by baseless fraud charges and also helps shield courts from opportunistic

17   plaintiffs who would "unilaterally impos[e]" upon them the "enormous social and economic costs

18   [of a fraud lawsuit] absent some factual basis." *Kearns*, 567 F.3d at 1125.  Rule 9(b)'s heightened

19   pleading requirement applies whenever a claim is "grounded or fraud" or "alleges a unified course

20   of fraudulent conduct." *Kearns*, 567 F.3d at 1127.  Claims for conversion that allege fraud are

21   therefore subject to Rule 9(b). *See Lazar v. Grant*, 2017 WL 4805067, at *3 (C.D. Cal. June 22,

22   2017) (conversion claim that was "based on averments of fraudulent conduct" was required to

23   "satisfy the required particularly standard of Rule 9(b)"); *GEC US 1 LLC v. Frontier Renewables,*

24   *LLC*, 2016 WL 4677585, at *6 (N.D. Cal. Sept. 7, 2016) ("Because plaintiffs' claims for conversion

25

26   _____

     [4] Because Cisco's claim for trademark infringement under the Lanham Act fails, so too does its claim

27   for trademark infringement under California common law. *Kythera Biopharms., Inc. v. Lithera, Inc.*,
     998 F. Supp. 2d 890, 897 (C.D. Cal. 2014) (analyzing federal and common law trademark

28   infringement claims "together" because the "tests for infringement of a federally registered mark
     [and] infringement of a common law trademark . . . are the same").

and civil theft involve allegations of fraud, the Court applies the heightened pleading standard of particularity as required by Rule 9(b).").

Cisco's conversion claim alleges that unidentified "co-conspirators" of BecTech, acting on BecTech's behalf, committed discount fraud by "intentionally [taking] possession of Cisco products and services" through unspecified "wrongful acts." (Compl. ¶ 90.) According to Cisco, the co-conspirators obtained Cisco products "for which Cisco granted special discounts for specified end customers in China and elsewhere" and then delivered the products to BecTech instead. (*Id.*) They then "fraudulently concealed these acts." (*Id.*) This "theft by deception" allegedly harmed Cisco because it unintentionally sold products at a discount. This claim both "specifically alleg[es] fraud" and "alleg[es] facts that necessarily constitute fraud" and therefore must meet Rule 9(b)'s particularity requirement. *Vess*, 317 F.3d at 1105; *see also* Compl. ¶ 91 (referring to "Defendant's co-conspirators' fraudulent conduct"); *id.* ¶ 93 (referring to "products that were obtained by fraud by co-conspirators"); *id.* ¶ 97 (requesting punitive damages on account of BecTech's "fraudulent" conduct). It fails to do so.

### 2.    Cisco's Conversion Claim Is Not Alleged With Particularity

The allegations supporting Cisco's conversion claim do not even approach Rule 9(b)'s bar. Cisco attempts to allege three incidents of discount fraud. The first two incidents concern four transceivers Cisco's "investigator" purchased from BecTech on January 9 and 11, 2017. (Compl. ¶¶ 47, 49.) According to Cisco, it sold the transceivers to authorized Cisco resellers in China and the United States, respectively, with special discount pricing for unidentified end users. (*Id.* ¶¶ 48, 50.) The third incident concerns two switches Cisco bought from BecTech, also in January 2017. Cisco alleges that these switches were also sold to a Cisco authorized reseller in China, with delivery in December 2016.

Cisco appears to believe that each of these incidents constitutes "discount fraud" that was facilitated by misrepresentations that were made to it. Yet it fails to describe the *who* of the alleged discount fraud with any particularity. It does not allege any statements at all—let alone false statements—by BecTech. Instead, it attributes to anonymous "co-conspirators" any allegedly fraudulent statements which may have induced it to ship products at a discount. (Compl. ¶ 90.)

BECCELA'S ETC., LLC'S MOTION TO DISMISS

5278601

1  Presumably Cisco knows who these shadowy "co-conspirators" are, since it suggests they made

2  statements *to Cisco*, inducing Cisco to ship products *to them*, at a discount.  Yet Cisco fails to identify

3  them.  Equally important, Cisco fails to explain how the unidentified co-conspirators are connected

4  to BecTech.   If these "co-conspirators" are real, Cisco must name them.   *See Sanford v.*

5  *MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010) (holding that "[t]o avoid dismissal for

6  inadequacy under Rule 9(b)," a complaint must identify "the identities of the parties to the

7  misrepresentation").

8       Nor does Cisco allege the *what*, *when*, or *where* of the alleged fraud.  It is required to set forth

9  the "time, place, and specific content of the false representations" in order to state a claim.  *Sanford*,

10  625 F.3d at 558.  Cisco does none of these.  It fails to identify the particular content of even a single

11  allegedly fraudulent representation, does not state when any misrepresentation was made, and does

12  not identify the place—or medium—of any statement.  Instead, it relies on innuendo, again vaguely

13  referring to unidentified "co-conspirators" who undertook undefined "wrongful acts," which they

14  later "fraudulently concealed" through unspecified means.  Who these parties are, what they said,

15  how they concealed their alleged fraud, and how they were supposedly acting on BecTech's behalf,

16  is all a mystery.  This fails Rule 9(b)'s particularity requirement.  *See Allwaste, Inc. v. Hecht*, 65 F.3d

17  1523, 1530 (9th Cir. 1995) (holding that "unspecified acts of mail and wire fraud," where "[n]o dates

18  [we]re given" for the communications, "fail[ed] to meet the particularity requirement of Rule 9(b)");

19  *Lazar*, 2017 WL 4805067, at *2 (dismissing conversion claim for failure to plead with particularity

20  where plaintiff did not state "when and where the alleged false promises were made").

21       These failures are compounded by the fact that Cisco's conversion claim is alleged on

22  information and belief.  (Compl. ¶ 90.)  "[A]llegations of fraud based on 'information and belief' do

23  not satisfy the particularity requirements of Rule 9(b)."  *Haley v. Macy's, Inc.*, 263 F. Supp. 3d 819,

24  824 (N.D. Cal. 2017).  There is no indication, anywhere in the Complaint, that Cisco knows of facts

25  implicating BecTech in any discount fraud.  It alleges that BecTech either "kn[ew] about [a]

26  fraudulent taking or ignor[ed] red flags" of discount fraud.  (Compl. ¶ 93.)  But it does not say *why*

27  it believes BecTech knew of discount fraud, and it does not say what "red flags" BecTech should

28  have noticed.

- 12 -
BECCELA'S ETC., LLC'S MOTION TO DISMISS

1   Indeed, the only allegation that could plausibly be read to identify a "red flag" of discount

2   fraud is Cisco's insistence that two switches BecTech sold in January 2017 had been "delivered in

3   China in December 2016."  (Compl. ¶ 42.)  (Cisco conspicuously does not say when the four

4   transceivers were originally sold.[5])  But Cisco does not allege any facts suggesting that BecTech

5   knew of this supposed "red flag."  *See Dolan v. PHL Variable Ins. Co.*, 2017 WL 4812308, at *5

6   (M.D. Pa. Oct. 25, 2017) (allegations of "red flags" that did not identify specific instances of fraud,

7   and that were alleged on information and belief, failed to meet Rule 9(b)).  Nor does Cisco identify,

8   with particularity or otherwise, any other "red flags" of discount fraud.

9           *3.*    *Cisco Fails To Allege Any Wrongful Act By BecTech*

10   Even if Cisco's allegations about discount fraud by BecTech's unidentified "co-conspirators"

11   were sufficiently particular, they would not state a claim for conversion against BecTech.  The

12   elements of conversion are "(1) the plaintiff's ownership or right to possession of the property; (2) the

13   defendant's conversion by a wrongful act or disposition of property rights; and (3) damages."  *Lee v.*

14   *Hanley*, 61 Cal. 4th 1225, 1240 (2015).  Cisco's failure to identify any wrongful act *by BecTech* that

15   could form the basis of a conversion claim is fatal to its conversion claim.  *See Spates v. Dameron*

16   *Hosp. Ass'n*, 114 Cal. App. 4th 208, 222 (Cal. Ct. App. 2003) (absence of wrongful act forecloses

17   conversion claim); *BITH, LLC v. Mikail*, 2012 WL 654698, at *6 (Cal. Ct. App. Feb. 28, 2012)

18   (allegation that defendant received property it knew had been stolen was a "barren conclusion

19   unsupported by allegations of fact" that could not "support a finding that [the defendant] engaged in

20   wrongful conduct supporting a claim for conversion").  Nor does Cisco adequately allege BecTech's

21   intent.  *See Collin v. Am. Empire Ins. Co.*, 21 Cal. App. 4th 787, 812 (Cal. Ct. App. 1994) ("[A]

22   necessary element of the tort [of conversion] is an intent to exercise ownership over property which

23   belongs to another.  For this reason, conversion is considered an intentional tort.").

24

25

26   [5] This omission was intentional.  Cisco revealed the dates of the original sales of the transceivers to

27   BecTech in pre-complaint correspondence.  In response, BecTech pointed out that Cisco's original sale of the transceivers preceded BecTech's downstream sale by a long enough period as to undercut

28   any possible inference of discount fraud.  No doubt realizing BecTech was correct, Cisco apparently decided to leave the dates out of its Complaint altogether.

**C.      Cisco's Claim For Inducing Breach Of Contract Must Fail**

Cisco alleges, on information and belief, that BecTech induced breaches of its contracts with third parties in two ways.  *First*, it asserts that BecTech induced Cisco's "Authorized Resellers" to breach their contracts with Cisco, known as the Indirect Channel Partnership Agreement (the "ICPA"), by causing them to sell Cisco products and services to BecTech instead of to End Users. (Compl. ¶ 87.)  *Second*, Cisco attempts to shoehorn its inadequate discount fraud allegations into an induced breach claim by alleging that BecTech "directly induced" Cisco's Authorized Resellers to "breach their agreements with Cisco by making material misrepresentations[6] to Cisco in order to obtain special discount pricing on Cisco service contracts and products."  (*Id.*)  Neither of these theories states a claim, and Cisco's claim for induced breach should be dismissed.

To state a claim for inducing breach of contract a plaintiff must allege that "(1) he had a valid and existing contract [with a third party]; (2) defendant had knowledge of the contract and intended to induce its breach; (3) the contract was in fact breached by the contracting party; (4) the breach was caused by . . . defendant's unjustified or wrongful conduct; and (5) damages[.]"  *Shamblin v. Berge*, 166 Cal. App. 3d 118, 122 (Cal. Ct. App. 1985).  Cisco's first theory—that BecTech induced a breach of the ICPA—fails because Cisco has not alleged that BecTech actively induced the breach, that the breach would not have occurred absent BecTech's inducement, or damages.  Cisco's second theory likewise fails because Cisco has not identified any other contract that was allegedly breached, let alone that BecTech had knowledge of that contract or a corresponding breach.

*1.      Cisco Does Not Allege Active Inducement to Breach the ICPA Or Causation*

For an action for induced breach to lie, the defendant must have "intentionally and actively induced the breach."  *Imperial Ice Co. v. Rossier*, 18 Cal. 2d 33, 39 (1941).  In addition, the plaintiff "must allege" that absent the defendant's inducement, "the contract would otherwise have been performed[.]"  *Dryden v. Tri-Valley Growers*, 65 Cal. App. 3d 990, 997 (1997).  Accordingly, a plaintiff cannot state an induced breach by merely alleging, as Cisco does here, that a defendant came

---

[6] Cisco's failure to allege the "material misrepresentations" that Cisco's Authorized Resellers made at BecTech's inducement is also a basis to dismiss this claim.  *See MetroPCS v. SD Phone Trader*, 187 F. Supp. 3d 1147, 1150 (S.D. Cal. 2016) (holding that tortious interference claims sounding in fraud are subject to Rule 9(b)).

1  into possession of goods that were sold, at some point in the past, by a third party who was forbidden

2  from doing so.  Instead, the plaintiff must allege that the defendant undertook "intentional acts

3  designed to induce a breach or disruption of the contractual relationship." *Quelimane Co. v. Stewart*

4  *Title Guaranty Co.*, 19 Cal. 4th 26, 55 (1998).

5         There are no facts in the Complaint plausibly supporting an allegation that BecTech actively

6  induced any Authorized Reseller to breach its obligations to Cisco under the ICPA.  Cisco does not

7  allege that BecTech solicited any Authorized Reseller to sell Cisco products or services to it.  Indeed,

8  Cisco concedes that it is not sure BecTech ever even *contacted* the Authorized Reseller,

9  acknowledging that BecTech may have "purchased the SMARTnet contract through an

10 intermediary."[7]  (Compl. ¶ 51.)  Nor does Cisco allege, as it must, that the Authorized Reseller in

11 question would have performed its obligations to Cisco absent BecTech's involvement.  *See*

12 *Augustine v. Trucco*, 124 Cal. App. 2d 229, 246 (1954) (complaint that contained "no allegation that

13 the [third party] would otherwise have performed any contract with the plaintiff" or that the defendant

14 "intentionally or actively induced or persuaded the [third party] to breach" failed to state a claim for

15 induced breach); *Wynn v. Nat'l Broadcasting Co.*, 234 F. Supp. 2d 1067, 1121 (C.D. Cal. 2002)

16 (dismissing tortious interference with contract claim where plaintiff had "failed to allege facts

17 sufficient to allow an inference that the [party] otherwise would have performed had the [defendants]

18 not interfered, which is a requirement to establish causation").  All Cisco alleges is that BecTech

19 ended up with a product Cisco had forbidden its Authorized Reseller to sell to a non-end user.  That

20 may state a claim for breach against the Authorized Reseller, but it does not state a claim for induced

21 breach against BecTech.  *See Moore v. Apple Inc.*, 2015 WL 7351464, at *2-3 (N.D. Cal. Nov. 20,

22 2015) (recognizing that the interference must be the "but-for" cause of a breach).

23              2.     *Cisco Does Not Allege Damages For Induced Breach Of The ICPA*

24        Cisco also fails to adequately allege damages.  It is "fundamental" that "damages which are

25 speculative, remote, imaginary, contingent, or merely possible cannot serve as a legal basis for

26 recovery."  *Frustuck v. City of Fairfax*, 212 Cal. App. 2d 345, 367-68 (Cal. Ct. App. 1963).  Cisco

27

28 _____

[7] Who this intermediary is and what they were told is left unsaid.

BECCELA'S ETC., LLC'S MOTION TO DISMISS

5278601

alleges that it *might* incur "out-of-pocket expenses related to services provided on unauthorized Cisco products" or alternatively "the costs of supporting and potentially replacing" products accompanied by SMARTnet contracts sold by BecTech.  (Compl. ¶ 88; *see also id.* ¶ 52.)  That is insufficient. Cisco has not alleged any actual damages from the single alleged induced breach it identifies— BecTech's sale of a SMARTnet contract it (or someone else, Cisco is not sure) procured from Cisco's German Authorized Reseller.  Instead, Cisco's damages theory is that it might, at some undetermined future time, incur damages not from the breach it has alleged, but from some undetermined future breach.  *See Maximum Availability Ltd. v. Vision Solutions, Inc.*, 2010 WL 11508470, at *5 (C.D. Cal. Dec. 16, 2010) (dismissing intentional interference with prospective economic advantage claim for which damages were "too speculative to survive a motion to dismiss").

### 3. *Cisco Does Not Allege Breach Of Any Other Contract*

Cisco also asserts that BecTech induces third parties to breach their contractual obligations to Cisco as part of BecTech's alleged discount fraud.  This theory fails for multiple reasons.  *First*, as with Cisco's conversion claim, this theory relies on fraud—namely, the alleged "material misrepresentations" Cisco's anonymous Authorized Resellers allegedly made to Cisco.  (Compl. ¶ 87.)  But Cisco does not describe the fraud with particularity as required by Rule 9(b).  Cisco does not name the speaker, describe the misrepresentation, or explain why it believes BecTech knew of the misrepresentation or was "reasonably on notice that there was a high likelihood" it was receiving products procured by fraud.  (*See* Compl. ¶ 87; *see also supra* at 10-13.)  *Second*, Cisco does not allege *any* of the substantive requirements of the tort of induced breach.  It does not allege (a) the existence of a contract (or explain why the only contract it has identified, the ICPA, applies to this conduct); (b) BecTech's knowledge of the unidentified contract; (c) breach of the unidentified contract; (d) how BecTech's active inducement caused the breach; (e) that the contract would have been performed but for BecTech's inducement; or (f) how BecTech's induced breach resulted in damages.

Accordingly, Cisco's claim for induced breach should be dismissed in its entirety.

**D.    Cisco Lacks Standing To Pursue Its Lanham Act False Advertising Claim**

Cisco's third claim is for what it calls "federal unfair competition" under the Lanham Act, 15 U.S.C. § 1125(a).  Section 1125 "creates two distinct bases of liability": "false association," under § 1125(a)(1)(A), and "false advertising," under § 1125(a)(1)(B).  *Lexmark Int'l v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1384 (2014).  Cisco attempts to state claims under both theories. (Compl. ¶ 69 (tracking the language of § 1125(a)(1)(A)); *id.* ¶ 70 (same, for § 1125(a)(1)(B)).)  Both fail because Cisco lacks standing to assert a false advertising claim.

In *Lexmark*, the Supreme Court explained that § 1125 does not permit all "factually injured plaintiffs to recover."  134 S. Ct. at 1388.  Instead, the only plaintiffs with standing to sue under § 1125(a) are those who fall within that statute's "zone of interests" and whose injuries are "proximately caused by violations of the statute."  *Id.* at 1388, 1390.  A would-be § 1125 plaintiff is only within the statute's "zone of interests" if it can "allege an injury to a commercial interest in reputation or sales."  *Id.* at 1390.  And that plaintiff will only meet the statute's proximate cause requirement if it can "show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising," which happens "when deception of consumers causes them to withhold trade from the plaintiff."  *Id.* at 1391.

Here, Cisco lacks statutory standing to pursue its false advertising claim under § 1125(a). That claim alleges that BecTech violates § 1125(a) by "falsely advertising that [] infringing goods were genuine Cisco products," falsely stating that its products are "factory-sealed," and failing to disclose that its products do not come with a manufacturer warranty.  (Compl. ¶ 70.)

But Cisco makes no attempt to plausibly allege either that it has suffered reputational harm from BecTech's alleged false advertising and that consumers have withheld sales as a result.  Its only allegation of damages attached to its § 1125(a) claim is a conclusory one: that BecTech's violations have caused "substantial and irreparable injury to Cisco and to the business and goodwill represented by the Cisco Marks."  (Compl. ¶ 72.)[8]  Elsewhere, Cisco alleges that "when consumers purchase

---

[8] The conclusory nature of this damages allegation is illustrated by the fact that it is repeated, verbatim, in two other complaints filed by Cisco in this District on the same day it sued BecTech. *See Cisco Sys., Inc. et al. v. Shattor et al.*, Case No. 3:18-cv-00480-LB (N.D. Cal. Jan. 22, 2018),
(Continued...)

products that are advertised as 'new factory sealed,' they believe that they are purchasing genuine products manufactured by Cisco that have not been tampered with from the time the product was sealed in its shipping packaging." (*Id.*)  But an allegation that a plaintiff's "goodwill and reputation have been damaged and that [its] customers are being deceived" is "not sufficient to sue under the Lanham Act." *578539 B.C., Ltd. v. Kortz*, 2014 WL 12572679, at *6 n.54 (C.D. Cal. Oct. 16, 2014); *see also Bobbleheads.com, LLC v. Wright Brothers, Inc.*, 259 F. Supp. 3d 1087, 1097 (S.D. Cal. 2017) (dismissing Lanham Act false advertising claim for failure to plead "specific allegations of, at the very least, lost sales or damage to [the plaintiff's] reputation").

At bottom, the Complaint does not plausibly allege that Cisco has suffered *any* lost sales as a result of BecTech's alleged false advertising.**9**   Accordingly, its claim for "federal unfair competition" is subject to dismissal insofar as it is premised on alleged false advertising under § 1125(a)(1)(B).

**E.      Cisco Lacks Standing To Pursue Its California False Advertising Claim**

For similar reasons, Cisco does not have statutory standing to assert its fourth claim, for false advertising under the California False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.*

Plaintiffs must have "lost money or property as a result of" the alleged false advertising in order to sue under the False Advertising Law.  *See* Cal. Bus. & Prof. Code § 17535.  In conclusory fashion, Cisco alleges that it has "suffered loss of money" due to BecTech's alleged false advertising. (Compl. ¶ 84.)  It then repeats its familiar allegation that Cisco will suffer unspecified "irreparable injury" and "injury to [its] reputation and goodwill" if the allegedly false advertising does not cease. (*Id.*)  It is well settled that allegations of this fashion do not establish standing under § 17500.  *See Singh v. Google, Inc.*, 2018 WL 984854, at *5 n.5 (N.D. Cal. Feb. 20, 2018) (Freeman, J.) ("The

---

Dkt. 1 ¶ 58; *Cisco Sys., Inc. et al. v. Server Supply.com, Inc.*, Case No. 3:18-cv-00478-SK (N.D. Cal. Jan. 22, 2018), Dkt. 1 ¶ 64.  Indeed, Cisco has used this boilerplate damages allegation, without modification, since at least 2014.  *See Cisco Sys., Inc. et al. v. Infinity Micro Computer, Inc. et al.*, Case No. 2:14-cv-02961 (N.D. Cal. Apr. 17, 2014), Dkt. 1 ¶ 60 (asserting an identical damages allegation for a § 1125(a) claim).

**9**   BecTech does allege some lost sales in paragraph 21 of its Complaint, but only as related to counterfeit products—i.e., its false association claim under § 1125(a)(1)(A)—and not false advertising under § 1125(a)(1)(B).

BECCELA'S ETC., LLC'S MOTION TO DISMISS

5278601

1  Court also need not credit Singh's conclusory allegations that he 'lost money or property' as a result

2  of Google's actions or inactions."); *Creative Mobile Techs., LLC v. Flyware Software, Inc.*, 2016

3  WL 7102721, at *3 (N.D. Cal. Dec. 6, 2016) (reasoning that a "bare allegation" that a plaintiff had

4  been "directly harmed" by unfair business practices through the loss of unspecified "substantial

5  business opportunities" did not "plausibly allege a loss of money or property"); *Lauren v. Lending*

6  *Tree, LLC*, 2011 WL 3242008, at *4 (Cal. Ct. App. July 29, 2011) (unpublished) (holding that a

7  "conclusory, boilerplate" allegation that a plaintiff had "lost money or property" as a result of false

8  advertising did not establish standing under § 17500); *see also Enlink Geoenergy Servs., Inc. v.*

9  *Jackson & Sons Drilling & Pump, Inc.*, 2010 WL 1221861, at *2 (N.D. Cal. Mar. 24, 2010) ("Mere

10  conclusory recitations of a statute are not sufficient under Rule 8 to plead a cause of action.").

11  Accordingly, Cisco's claim for false advertising under California law should be dismissed.

12      **F.    The Court Should Strike Cisco's Conclusory Allegations of Fraud**

13      Rule 12(f) provides that "any redundant, immaterial, impertinent, or scandalous matter" in a

14  complaint is subject to being stricken.  Although motions to strike are sometimes characterized as

15  being "viewed with disfavor," they will be granted when a plaintiff has not "pled any facts"

16  supporting particular claims or allegations.  *Taiwan Semiconductor Mfg. Co. v. Tela Innovations,*

17  *Inc.*, 2014 WL 3705350, at *3, *7 (N.D. Cal. July 24, 2014) (Freeman, J.) (granting motion to strike

18  allegations concerning "willful and malicious" trade secret misappropriation).  Courts also grant

19  motions to strike where the allegations "may prejudice one or more of the parties to the suit."  *Barnes*

20  *v. AT&T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1173 (N.D. Cal. 2010).

21      *1.    The Court Should Strike Cisco's Allegations Of Discount Fraud*

22      For the reasons stated *supra* at pages 10-13, Cisco's allegations of discount fraud do not state

23  a claim for conversion (or anything else) against BecTech.  In addition to failing to state a claim,

24  these allegations are subject to strike.

25      *First*, courts routinely grant motions to strike inadequately pleaded allegations of fraud.  *See,*

26  *e.g.*, *T.T. ex. rel. Susan T. v. Cty. of Marin*, 2013 WL 308908, at *7 (N.D. Cal. Jan. 25, 2013) (granting

27  motion to strike fraud counterclaim that "plainly fail[ed]" to meet Rule 9(b)'s particularity

28  requirement by, among other things, "fail[ing] to identify which . . . defendant[] made which

representation"); *Knepp Kraft Constr. Co. v. Interstate Restoration Grp.*, 2008 WL 11338127, at *4 (C.D. Cal. Apr. 21, 2008) (striking "allegations of fraud that [we]re clearly insufficient to satisfy Rule 9(b)" even when those allegations did not form the basis of a claim); *Russo v. M/T Dubai Star*, 2010 WL 1753187, at *7 (N.D. Cal. Apr. 29, 2010) (granting a motion to strike an allegation of fraud "on grounds of immateriality, as plaintiffs have not stated a claim for fraud"); *Stutzman v. Armstrong*, 2013 WL 4853333, at *20 (E.D. Cal. Sept. 10, 2013) (granting motion to strike fraud claims for failure to allege fraud with particularity); *Code Rebel, LLC v. Aqua Connect, Inc.*, 2013 WL 5405706, at *10 (C.D. Cal. Sept. 24, 2013) (granting motion to strike fraud claims for failure to "stat[e] with particularity the circumstances constituting fraud").  Because Cisco's allegations of "willful corporate theft" and "discount fraud schemes," (Compl. ¶ 1), are not alleged with any particularity, the Court should strike them as immaterial to Cisco's claims.

*Second*, BecTech will suffer significant prejudice if the Court does not strike Cisco's unsupported and conclusory allegations of discount fraud.  For the purposes of a motion to strike, prejudice exists where "legally unsustainable" allegations will require a party to be subject to "expensive and potentially unnecessary and irrelevant discovery." *Barnes*, 718 F. Supp. 2d at 1173; *see also Bottoni v. Salli Mae, Inc.*, 2011 WL 3678878, at *2 (N.D. Cal. Aug. 22, 2011) ("[T]he obligation to conduct expensive and potentially unnecessary and irrelevant discovery is a prejudice.").  Cisco has not alleged that BecTech has participated in any fraud, let alone to the strictures of Rule 9(b).  Cisco may not use conclusory allegations of fraud by unnamed third parties as a vehicle to conduct a fishing expedition to determine whether its suspicions are correct.  The Federal Rules do "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79; *see also Dichter-Mad Family Partners, LLP v. United States*, 707 F. Supp. 2d 1016, 1053 n.23 (C.D. Cal. 2010) (noting that "something more than a conclusory allegation is required to obtain discovery").  The Court should therefore strike all of the Complaint's allegations relating to discount fraud.[10]

---

[10] Those allegations comprise: ¶¶ 1, 39-50, 87 (second sentence), 89-97; and sections (B)(iii) and (I) of the Prayer for Relief.

BECCELA'S ETC., LLC'S MOTION TO DISMISS

5278601

2.     *The Court Should Strike Cisco's Penal Code § 532 Allegation*

Cisco also alleges that BecTech has "violate[d] California Penal Code § 532" by selling "products that have been stolen from Cisco through discount fraud schemes and other methods" in support of its Unfair Competition Law claim.  (Compl. ¶ 104.)  This allegation fails in a number of respects.  *First*, as with any allegation of fraud, Cisco is required to plead violations of § 532 with particularity.  For the reasons discussed *supra* at pages 10-13, it does not.

*Second*, Cisco does not even properly allege the elements of a violation of § 532.  That section bars theft by false pretense, the elements of which are "(1) the defendant made a false pretense or representation to the owner of property; (2) with the intent to defraud the owner of that property; and (3) the owner transferred the property to the defendant in reliance on that representation."  *People v. Wooten*, 44 Cal. App. 4th 1834, 1842 (1996).  But Cisco does not allege that BecTech made any statements to Cisco, let alone that those statements were false and made with intent to defraud Cisco.  Cisco's theory of fraud is that some unidentified third party made some undescribed false statements to it at some unspecified time, and that BecTech knew of certain unnamed "red flags" when it purchased products from vendors.  This does not state a violation of § 532.  *See id.*; *see also White v. California*, 2012 WL 5844881, at *5 (C.D. Cal. Oct. 3, 2012) (theft by false pretenses requires proof that the defendant "made a false statement and acted with fraudulent intent").  The allegation that BecTech has violated § 532 is an unsupported conclusion of law which should be stricken.

3.     *The Court Should Strike Cisco's Allegations Regarding "Potentially Stolen Transceivers"*

Finally, the Court should strike Cisco's allegations regarding the sale of "potentially stolen transceivers" in paragraphs 44 through 46 of the Complaint.  These allegations do not form the basis of any claim for relief and are therefore "immaterial" to the Complaint.  *See* Fed. R. Civ. P. 12(f); *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *judgment rev'd on other grounds*, 510 U.S. 517 (1994) ("'Immaterial' matter is that which has no essential or important relationship to the claim for relief of the defenses being pleaded.").

Cisco is transparent about the reason why these allegations were included in the Complaint despite not being referred to by any of its claims.  Cisco complains that counsel for BecTech

- 21 -

5278601

1    "provided no information" about where BecTech procured the transceivers in question, and it would

2    like discovery to sate its curiosity.  (See Compl. ¶ 46.)  But accusations of theft made to a federal

3    tribunal require more than a party's say-so, and Cisco must come forward with more than confusion

4    about its sales records in order to root around BecTech's supply chain.  Instead, however, Cisco is

5    forced to concede that it is not sure the transceivers were ever stolen; it calls them "potentially stolen"

6    and then states alternatively that they "possibly were obtained by theft" or "might have been stolen."

7    (Compl. ¶¶ 44-46.)  This is not enough to resist being stricken under Rule 12(f).

8    **V.    CONCLUSION**

9            Cisco's Complaint is a legal conclusion in search of facts.  It fails to support its claims with

10   anything more than a threadbare recitation that BecTech has violated a bevy of laws.  The Federal

11   Rules do not permit a plaintiff to turn suspicion and innuendo into license to conduct burdensome,

12   far-reaching discovery to supply the factual basis that the plaintiff needed to file the lawsuit in the

13   first instance.  The Court should grant BecTech's motion and require Cisco to plead facts, not law.

14    DATED:  March 29, 2018                          Respectfully submitted,
                                                      HUESTON HENNIGAN LLP
15

16                                                    */s/ John C. Hueston*
                                                      John C. Hueston
17                                                    Attorneys for Defendant
                                                      BECCELA'S ETC., LLC
18

19

20

21

22

23

24

25

26

27

28

5278601

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the above and foregoing document was duly served electronically on all known counsel of record through the Court's Electronic Filing System on the 29th day of March, 2018.

*/s/ John C. Hueston*
John C. Hueston

BECCELA'S ETC., LLC'S MOTION TO DISMISS

5278601