1  John C. Hueston, State Bar No. 164921
   jhueston@hueston.com
2  Douglas J. Dixon, State Bar No. 275389
   ddixon@hueston.com
3  HUESTON HENNIGAN LLP
   620 Newport Center Drive, Suite 1300
4  Newport Beach, CA 92660
   Telephone:     (949) 229-8640
5  Facsimile:      (888) 775-0898

6  Adam Olin, State Bar No. 298380
   aolin@hueston.com
7  HUESTON HENNIGAN LLP
   523 W. 6th Street, Suite 400
8  Los Angeles, CA 90094
   Telephone:    (213) 788-4340
9  Facsimile:      (888) 775-0898

10 Attorneys for Defendants and Counterclaimants
   BECCELA'S ETC., LLC and ARBITECH, LLC

11

12                UNITED STATES DISTRICT COURT

13             NORTHERN DISTRICT OF CALIFORNIA

14

15 CISCO SYSTEMS, INC., et al.,          Case No. 5:18-CV_00477-BLF

16              Plaintiffs,              **ANSWER AND COUNTERCLAIMS**

17        vs.                            Judge:  Hon. Beth Labson Freeman

18 BECCELA'S ETC., LLC, et al.,

19              Defendants and
                Counterclaimants.
20

21

22

23

24

25

26

27

28

Defendants Beccela's Etc., LLC ("BecTech") and Arbitech, LLC ("Arbitech," and together with BecTech, "Defendants" and "Counterclaimants"), by and through their undersigned counsel, hereby respectfully submit this Answer and Counterclaims to the First Amended Complaint ("FAC") of Plaintiffs Cisco Systems, Inc. and Cisco Technology, Inc. (together, "Cisco").

**I.  ANSWER**

**GENERAL RESPONSES**

Except as expressly admitted herein, BecTech and Arbitech deny any and all material allegations in the FAC.  With the exception of the Affirmative Defenses and Counterclaims, the numbered paragraphs of this Answer correspond to the paragraphs as numbered in the First Amended Complaint.  To the extent paragraphs in the First Amended Complaint are grouped under headings, BecTech and Arbitech respond generally that such headings and groupings are conclusions of law or fact and deny each and every such allegation made or implied by such headings or groupings.

**SPECIFIC RESPONSES**

1.    BecTech and Arbitech deny the allegations of Paragraph 1.

2.    BecTech and Arbitech lack knowledge or information sufficient to form a belief about the allegations in Paragraph 2 and on that basis deny them.

3.    BecTech and Arbitech admit that BecTech is a limited liability company operating in Orange County, California, and that it has done business as BecTech Global and as Tuksy. "Beccela's" is alternately misspelled as "Beccela" and "Becella" in Paragraph 3, but BecTech admits that it is an LLC whose only member is Arbitech.  BecTech and Arbitech deny the remaining allegations of Paragraph 3.

4.    Arbitech admits that it is a California limited liability company and that its principal business location is in Orange County, California.  BecTech and Arbitech deny the remaining allegations of Paragraph 4.

5.    Arbitech admits that it has purchased products from HongKong Sellsi, and that it did so from California.  BecTech and Arbitech otherwise lack knowledge or information sufficient to

1  form a belief about the truth of the remaining allegations in Paragraph 5 and on that basis deny

2  them.

3        6.        BecTech and Arbitech lack knowledge or information sufficient to form a belief

4  about Cisco's knowledge or whether and how Cisco intends to further amend its Complaint, and on

5  that basis deny these allegations.  BecTech and Arbitech deny the remaining allegations of

6  Paragraph 6.

7        7.        Paragraph 7 consists of conclusions of law to which no response is necessary or

8  appropriate.

9        8.        BecTech and Arbitech deny the allegations of Paragraph 8.

10        9.        BecTech and Arbitech deny the allegations of Paragraph 9.

11        10.       BecTech and Arbitech admit the allegations of Paragraph 10.

12        11.       BecTech and Arbitech admit the allegations of Paragraph 11.

13        12.       BecTech and Arbitech admit that this Court has personal jurisdiction over them and

14  that they have engaged in business activities in this district, and otherwise deny the allegations of

15  Paragraph 12.

16        13.       BecTech and Arbitech admit that they are citizens and residents of the State of

17  California, and that they do business in the State of California, and otherwise deny the allegations

18  of Paragraph 13.

19        14.       BecTech and Arbitech lack knowledge or information sufficient to form a belief

20  about the truth of the allegations of Paragraph 14 and on that basis deny them.

21        15.       BecTech and Arbitech admit the allegations of Paragraph 15.

22        16.       BecTech and Arbitech admit the allegations of Paragraph 16.

23        17.       BecTech and Arbitech admit that Cisco develops networking products, and

24  otherwise deny the allegations of Paragraph 17, which constitute opinion and/or puffery.

25        18.       BecTech and Arbitech lack knowledge or information sufficient to form a belief

26  about the truth of the allegations in Paragraph 18 and on that basis deny them.

27        19.       BecTech and Arbitech deny the allegations of Paragraph 19.

28

20.     BecTech and Arbitech lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 20 and on that basis deny them.

21.     The first sentence of Paragraph 21 is a legal conclusion to which no response is necessary or appropriate.  BecTech and Arbitech lack knowledge or information sufficient to form a belief about the truth of the allegations of the second sentence of Paragraph 21 and on that basis deny them.

22.     BecTech and Arbitech deny the allegations of the first two sentences of Paragraph 22.  BecTech and Arbitech lack knowledge or information sufficient to form a belief about the truth of the allegations of the third sentence of Paragraph 22 and on that basis deny them.

23.     BecTech and Arbitech deny the allegations of Paragraph 23.

24.     BecTech and Arbitech deny the allegations of Paragraph 24.

25.     BecTech and Arbitech deny the allegations of Paragraph 25.

26.     BecTech and Arbitech lack knowledge or information sufficient to form a belief about the truth of Cisco's allegations regarding technical and safety assessments it performs.  BecTech and Arbitech deny the remaining allegations of Paragraph 26.

27.     BecTech and Arbitech deny the allegations of Paragraph 27.

28.     BecTech and Arbitech lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 28 and on that basis deny them.

29.     BecTech and Arbitech lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 29 and on that basis deny them.

30.     BecTech and Arbitech lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 30 and on that basis deny them.

31.     BecTech and Arbitech admit that Cisco offers warranty and support services for its products.  Because this paragraph does not refer to or incorporate specific contracts, BecTech and Arbitech lacks knowledge or information sufficient to form a belief about the truth of the allegations relating to those contracts, and on that basis denies them.  BecTech and Arbitech state that the terms of any such contract speak for themselves.

32.     BecTech and Arbitech lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 32 and on that basis deny them.

33.     BecTech and Arbitech state that the ICPA speaks for itself.  BecTech and Arbitech otherwise lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 33 and on that basis deny them.

34.     BecTech and Arbitech lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 34 and on that basis deny them.

35.     BecTech and Arbitech admit that BecTech operates the website <www.bectechglobal.com> and that that website carried the quoted language on July 10, 2017. BecTech and Arbitech deny the remaining allegations of Paragraph 35.

36.     BecTech and Arbitech admit that BecTech's website states that it accepts returns within 30 days of receipt.  BecTech and Arbitech deny the remaining allegations of Paragraph 36.

37.     BecTech and Arbitech admit that BecTech operates a storefront on Amazon.com. BecTech and Arbitech deny the remaining allegations of Paragraph 37.

38.     BecTech and Arbitech admit that BecTech operates a storefront on eBay and that it sells products from that storefront that are advertised as "BRAND NEW FACTORY SEALED." BecTech and Arbitech deny the remaining allegations of Paragraph 38.

39.     BecTech and Arbitech admit that in August 2011, Arbitech sold four switches that were drop-shipped to CPI Aerostructures, Inc.  BecTech and Arbitech state that CPI Aerostructures, Inc.'s website speaks for itself.  BecTech and Arbitech lack knowledge or information sufficient to form a belief about the truth of allegations related to any service request CPI Aerostructures, Inc. submitted to Cisco, Cisco's subsequent investigation, and whether or not the switch was counterfeit, and on that basis deny them.  BecTech and Arbitech admit that Cisco sent Arbitech correspondence dated February 2, 2012, and that Arbitech replied to this correspondence.  BecTech and Arbitech state that the contents of the correspondence speak for themselves.

40.     BecTech and Arbitech admit that Cisco sent Arbitech a letter on July 18, 2014 and state that the letter speaks for itself.

1      41.    BecTech and Arbitech admit that counsel for Cisco sent counsel for Arbitech

2  correspondence dated March 3, 2017, and that Arbitech replied on March 10, 2017, and state that

3  that correspondence speaks for itself.  BecTech and Arbitech lack knowledge or information

4  sufficient to form a belief about the truth of the remaining allegations of Paragraph 41 and on that

5  basis deny them.

6      42.    BecTech and Arbitech admit that Zunesis sold switches to One Nevada Credit

7  Union on or about March 10, 2017.  Cisco's assertion that this sale "violated [Zunesis'] contractual

8  obligations" is a legal conclusion to which no response is necessary or appropriate.  The remaining

9  allegations of this paragraph purport to reflect correspondence Cisco sent to Arbitech on April 20,

10  2017, and BecTech and Arbitech state that that correspondence speaks for itself.

11      43.    BecTech and Arbitech admit that Mr. Llaca responded to Cisco's counsel on

12  April 20, 2017, and that further correspondence between the two ensued on April 27, May 9,

13  May 19, and May 22.  BecTech and Arbitech state, in response to Cisco's allegations that purport

14  to reflect that correspondence, that the correspondence speaks for itself.

15      44.    BecTech and Arbitech admit that counsel for Cisco sent counsel for Arbitech

16  correspondence on June 19, 2017, and state that that correspondence speaks for itself.

17      45.    BecTech and Arbitech admit that counsel for Arbitech sent counsel for Cisco

18  correspondence dated July 5, 2017, and state that that correspondence speaks for itself.  BecTech

19  and Arbitech deny the second sentence of Paragraph 45.

20      46.    BecTech and Arbitech lack information and knowledge sufficient to form a belief

21  about the truth of the allegations of Paragraph 46, and on that basis deny them.

22      47.    BecTech and Arbitech lack information and knowledge sufficient to form a belief

23  about the truth of the allegations of Paragraph 47, and on that basis deny them.

24      48.    BecTech and Arbitech lack information and knowledge sufficient to form a belief

25  about the truth of the allegations of Paragraph 48, and on that basis deny them.

26      49.    BecTech and Arbitech admit that Arbitech identified HongKong Sellsi as the

27  company who sold it the switches identified in Paragraph 49.  BecTech and Arbitech otherwise

28

1    lack information and knowledge sufficient to form a belief about the remaining allegations of

2    Paragraph 49, and on that basis deny them.

3         50.    BecTech and Arbitech admit that Arbitech purchased WS-C2960X-48FPS-L

4    switches from HongKong Sellsi in March 2016, and that BecTech sold one of those switches in

5    April 2016.  BecTech and Arbitech deny the remaining allegations of Paragraph 50, including the

6    assertion that Paragraph 51 relates to the allegations in any way.

7         51.    BecTech and Arbitech lack information and knowledge sufficient to form a belief

8    about the truth of the allegations of Paragraph 51, and on that basis deny them.

9         52.    BecTech and Arbitech lack information and knowledge sufficient to form a belief

10   about the truth of the allegations of Paragraph 52 and on that basis deny them.

11        53.    BecTech and Arbitech admit that the switch in question was sold to Arbitech by

12   HongKong Sellsi in March 2016, and otherwise deny the allegations of Paragraph 53.

13        54.    BecTech and Arbitech deny the third sentence of Paragraph 54.  BecTech and

14   Arbitech otherwise lack information and knowledge sufficient to form a belief about the truth of

15   the remaining allegations of Paragraph 54 and on that basis deny them

16        55.    BecTech and Arbitech lack knowledge and information sufficient to form a belief

17   about the truth of Cisco's allegations in the first three sentences of Paragraph 55, and on that basis

18   deny them.  BecTech and Arbitech deny the fourth sentence of Paragraph 55.

19        56.    BecTech and Arbitech deny the allegations of Paragraph 56.

20        57.    BecTech and Arbitech deny the allegations of Paragraph 57.

21        58.    BecTech and Arbitech admit that 48-port switches and 24-port switches can use

22   different power supplies.  BecTech and Arbitech deny the remaining allegations of Paragraph 58.

23        59.    BecTech and Arbitech admit that on January 9, 2017, BecTech sold a switch with

24   the serial number identified in Paragraph 59 from its Amazon.com store, and that it shipped the

25   switch to within the Northern District of California.  BecTech and Arbitech lack knowledge and

26   information sufficient to form a belief regarding whether an "investigator engaged by Cisco"

27   purchased the switch from BecTech and on that basis deny the allegations.

28

1        60.    BecTech and Arbitech admit that BecTech sold a switch from Tuksy's store on

2   Amazon.com on January 11, 2017, and that it advertised the switch as "New (Factory Sealed)."

3   BecTech and Arbitech deny the remaining allegations of Paragraph 60.

4        61.    BecTech and Arbitech admit the allegations of Paragraph 61.

5        62.    BecTech and Arbitech deny the allegations of the first two sentences of Paragraph

6   62.  BecTech and Arbitech lack knowledge and information sufficient to form a belief about the

7   truth of Cisco's allegations in the third and fourth sentences of Paragraph 62, and on that basis deny

8   them.

9        63.    BecTech and Arbitech deny the allegations of Paragraph 63.

10       64.    BecTech and Arbitech admit that BecTech sold the two transceivers in question on

11  or about April 8, 2016, and that they were advertised as "New (Factory Sealed)."  BecTech and

12  Arbitech lack knowledge and information sufficient to form a belief regarding whether "the

13  investigator" purchased the transceivers from BecTech, and on that basis deny the allegations.

14       65.    BecTech and Arbitech admit that BecTech sold the transceivers within the Northern

15  District of California and otherwise deny the allegations of Paragraph 65.

16       66.    BecTech and Arbitech lack knowledge and information sufficient to form a belief

17  about the truth of the allegations of the first four sentences of Paragraph 66 and on that basis deny

18  them.  Arbitech and BecTech admit that counsel for Cisco sent a letter to BecTech on May 25,

19  2017, and state that the letter speaks for itself.  Arbitech and BecTech admit that counsel for

20  BecTech responded to the letter on June 14, 2017, and state that the response also speaks for itself.

21       67.    BecTech and Arbitech deny the allegations of the first, second, fourth, fifth, and

22  sixth sentences of Paragraph 67.  BecTech and Arbitech lack knowledge and information sufficient

23  to form a belief about the truth of the allegations of the third and seventh sentences of Paragraph 67

24  and on that basis deny them.

25       68.    Insofar as Paragraph 68 purports to reflect the terms and conditions of SMARTnet

26  agreements, BecTech and Arbitech state that those agreements speak for themselves.  BecTech and

27  Arbitech otherwise deny the allegations of Paragraph 68.

28

69.     BecTech and Arbitech incorporate herein by reference and reassert each and every response set forth in the foregoing Paragraphs.

70.     BecTech and Arbitech lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 70 and on that basis deny them.

71.     BecTech and Arbitech deny the allegations of Paragraph 71.

72.     BecTech and Arbitech deny the allegations of Paragraph 72.

73.     BecTech and Arbitech deny the allegations of Paragraph 73.

74.     BecTech and Arbitech deny the allegations of Paragraph 74.

75.     BecTech and Arbitech deny the allegations of Paragraph 75.

76.     BecTech and Arbitech deny the allegations of Paragraph 76.

77.     BecTech and Arbitech deny the allegations of Paragraph 77.

78.     BecTech and Arbitech deny the allegations of Paragraph 78.

79.     BecTech and Arbitech incorporate herein by reference and reassert each and every response set forth in the foregoing Paragraphs.

80.     BecTech and Arbitech lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 80 and on that basis deny them.

81.     BecTech and Arbitech deny the allegations of Paragraph 81.

82.     BecTech and Arbitech deny the allegations of Paragraph 82.

83.     BecTech and Arbitech deny the allegations of Paragraph 83.

84.     BecTech and Arbitech deny the allegations of Paragraph 84.

85.     BecTech and Arbitech deny the allegations of Paragraph 85.

86.     BecTech and Arbitech incorporate herein by reference and reassert each and every response set forth in the foregoing Paragraphs.

87.     BecTech and Arbitech deny the allegations of Paragraph 87.

88.     BecTech and Arbitech admit that they have sold products described as "new" or "factory sealed."  BecTech and Arbitech deny the other allegations of Paragraph 88.

89.     BecTech and Arbitech deny the allegations of Paragraph 89.

90.     BecTech and Arbitech deny the allegations of Paragraph 90.

91.     BecTech and Arbitech deny the allegations of Paragraph 91.

92.     BecTech and Arbitech deny the allegations of Paragraph 92.

93.     BecTech and Arbitech incorporate herein by reference and reassert each and every response set forth in the foregoing Paragraphs.

94.     BecTech and Arbitech lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 94 and on that basis deny them.

95.     BecTech and Arbitech deny the allegations of Paragraph 95.

96.     BecTech and Arbitech deny the allegations of Paragraph 96.

97.     BecTech and Arbitech deny the allegations of Paragraph 97.

98.     BecTech and Arbitech deny the allegations of Paragraph 98.

99.     BecTech and Arbitech deny the allegations of Paragraph 99.

100.    BecTech and Arbitech incorporate herein by reference and reassert each and every response set forth in the foregoing Paragraphs.

101.    BecTech and Arbitech deny the allegations of Paragraph 101.

102.    BecTech and Arbitech deny the allegations of Paragraph 102.

103.    BecTech and Arbitech deny the allegations of Paragraph 103.

104.    BecTech and Arbitech deny the allegations of Paragraph 104.

105.    BecTech and Arbitech deny the allegations of Paragraph 105.

106.    BecTech and Arbitech deny the allegations of Paragraph 106.

107.    BecTech and Arbitech incorporate herein by reference and reassert each and every response set forth in the foregoing Paragraphs.

108.    BecTech and Arbitech state that any contract between Cisco and third parties speaks for itself.  To the extent any other response is required, BecTech and Arbitech deny knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 108 because the nature of the specific contractual obligations and at what point BecTech and Arbitech are alleged to have become aware of them, is vague and ambiguous.

109.    BecTech and Arbitech deny the allegations of Paragraph 109.

110.    BecTech and Arbitech deny the allegations of Paragraph 110.

111.    BecTech and Arbitech incorporate herein by reference and reassert each and every response set forth in the foregoing Paragraphs.

112.    BecTech and Arbitech deny the allegations of Paragraph 112.

113.    BecTech and Arbitech deny the allegations of Paragraph 113.

114.    BecTech and Arbitech deny the allegations of Paragraph 114.

115.    BecTech and Arbitech deny the allegations of Paragraph 115.

116.    Paragraph 116 consists of a conclusion of law to which no response is necessary or appropriate.

117.    BecTech and Arbitech deny the allegations of Paragraph 117.

118.    BecTech and Arbitech deny the allegations of Paragraph 118.

119.    BecTech and Arbitech incorporate herein by reference and reassert each and every response set forth in the foregoing Paragraphs.

120.    BecTech and Arbitech deny the allegations of Paragraph 120.

121.    BecTech and Arbitech deny the allegations of Paragraph 121.

122.    BecTech and Arbitech incorporate herein by reference and reassert each and every response set forth in the foregoing Paragraphs.

123.    Paragraph 123 consists of conclusions of law to which no response is necessary or appropriate.

124.    BecTech and Arbitech deny the allegations of Paragraph 124.

125.    BecTech and Arbitech deny the allegations of Paragraph 125.

126.    BecTech and Arbitech deny the allegations of Paragraph 126.

127.    BecTech and Arbitech deny the allegations of Paragraph 127.

128.    BecTech and Arbitech deny the allegations of Paragraph 128.

129.    BecTech and Arbitech deny the allegations of Paragraph 129.

130.    BecTech and Arbitech deny the allegations of Paragraph 130.

## II.    **AFFIRMATIVE DEFENSES**

131.    Without admitting any wrongful conduct on the part of BecTech and Arbitech, and without admitting that Cisco has suffered any loss, damage, or injury, BecTech and Arbitech allege

the following affirmative defenses to the First Amended Complaint.  By designating the following as affirmative defenses, BecTech and Arbitech do not in any way waive or limit any defenses which are or may be raised by their denial, allegations, and averments set forth herein.  Certain affirmative defenses are asserted for completeness and refer to facts and proof which also negate required elements of Cisco's claims, and by raising such defenses BecTech and Arbitech do not admit that Cisco does not have the burden of proof and/or the burden of persuasion for any or all facts underlying any of those defenses or suggest that Cisco is not required to carry the burden as to such elements.

132.    These defenses are pled in the alternative, are raised to preserve the rights of BecTech and Arbitech to assert such defenses, and are without prejudice to BecTech and Arbitech's ability to raise other and further defenses.  BecTech and Arbitech expressly reserve all rights to reevaluate their defenses and/or assert additional defenses upon discovery and review of additional documents and information, upon the development of other pertinent facts, and during pretrial proceedings in this action.

## FIRST AFFIRMATIVE DEFENSE

### (FAILURE TO STATE A CLAIM)

133.    The First Amended Complaint, and each purported claim for relief contained therein, fails to state facts sufficient to state a claim for relief.

## SECOND AFFIRMATIVE DEFENSE

### (LACHES)

134.    Cisco's claims and/or recovery are barred, in whole or in part, by the doctrine of laches.

## THIRD AFFIRMATIVE DEFENSE

### (ACQUIESCENCE)

135.    Cisco's claims and/or recovery are barred, in whole or in part, by the doctrine of acquiescence.

## FOURTH AFFIRMATIVE DEFENSE

### (ESTOPPEL)

136. Cisco's claims and/or recovery are barred, in whole or in part, by the doctrine of estoppel.

## FIFTH AFFIRMATIVE DEFENSE

### (FIRST SALE DOCTRINE)

137. Cisco's claims and/or recovery are barred, in whole or in part, by the first sale doctrine.

## SIXTH AFFIRMATIVE DEFENSE

### (STATUTES OF LIMITATIONS)

138. Cisco's claims and/or recovery are barred, in whole or in part, by applicable statutes of limitations.

## SEVENTH AFFIRMATIVE DEFENSE

### (WAIVER)

139. Cisco's claims and/or recovery are barred, in whole or in part, by the doctrine of waiver.

## EIGHTH AFFIRMATIVE DEFENSE

### (LACK OF STANDING)

140. The First Amended Complaint is barred, in whole or in part, because Cisco lacks standing to assert the claims therein.

## NINTH AFFIRMATIVE DEFENSE

### (UNJUST ENRICHMENT)

141. Cisco's claims and/or recovery are barred, in whole or in part, by the doctrine of unjust enrichment.

## TENTH AFFIRMATIVE DEFENSE

### (UNCLEAN HANDS/INEQUITABLE CONDUCT)

142. Cisco's claims and/or recovery are barred, in whole or in part, by the doctrines of unclean hands, inequitable conduct, and similar defenses.

## ELEVENTH AFFIRMATIVE DEFENSE

### (NO CAUSATION)

143.   Cisco's claims and/or recovery are barred, in whole or in part, because Cisco's damages, if any, were not caused by Arbitech and BecTech.

## TWELFTH AFFIRMATIVE DEFENSE

### (NO DAMAGES)

144.   Without admitting that the First Amended Complaint states a claim, there has been no damage in any amount, manner, or at all by any reason of any act alleged against BecTech or Arbitech in the First Amended Complaint, and the relief prayed for in the First Amended Complaint therefore cannot be granted.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (LACK OF IRREPARABLE HARM)

145.   Cisco's claims for injunctive relief are barred because Cisco cannot show that it will suffer irreparable harm from BecTech and Arbitech's actions.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (ADEQUACY OF REMEDY AT LAW)

146.   The alleged injury or damage suffered by Cisco, if any, would be adequately compensated by damages.  Accordingly, Cisco has a complete and adequate remedy at law and is not entitled to seek equitable relief.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (REDUNDANCY)

147.   Without conceding that the First Amended Complaint states a claim, Cisco's claims and/or recovery are barred, in whole or in part, because they are redundant and/or duplicative of one another.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (ABANDONMENT)

148.   Cisco's claims and/or recovery are barred, in whole or in part, by abandonment of any marks at issue.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

(THIRD-PARTY USE)

149.    Cisco's claims and/or recovery are barred, in whole or in part, by reason of other parties' use of any marks at issue.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

(WILLFUL MISCONDUCT)

150.    Cisco's claims and/or recovery are barred, in whole or in part, by its own willful misconduct.

**NINETEENTH AFFIRMATIVE DEFENSE**

(NO PUNITIVE DAMAGES)

151.    Cisco fails to state facts sufficient to state any claim upon which an award of punitive or exemplary damages can be made against BecTech or Arbitech.  Cisco's request for punitive damages is barred, in whole or in part, on the grounds that an award of punitive damages in this matter would violate the California Constitution and the United States Constitution.

**TWENTIETH AFFIRMATIVE DEFENSE**

(CONDUCT OF OTHERS)

152.    Cisco's claims and/or recovery are barred, in whole or in part, because the conduct complained of is the conduct of others.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

(UNCERTAINTY OF DAMAGES)

153.    Cisco's claims and/or recovery are barred, in whole or in part, due to uncertainty of any alleged damages.

**TWENTY-SECOND AFFIRMATIVE DEFENSE**

(FAILURE TO MITIGATE)

154.    Cisco's claims and/or recovery are barred, in whole or in part, or must be diminished because Cisco failed to mitigate, minimize, or attempt to avoid damages.

1    **TWENTY-THIRD AFFIRMATIVE DEFENSE**

2    (JUSTIFICATION)

3    155.    Cisco's claims and/or recovery are barred, in whole or in part, or must be

4    diminished because BecTech and Arbitech's conduct was justified.

5    **ADDITIONAL DEFENSES**

6    156.    BecTech and Arbitech reserve the right to supplement this answer and to assert

7    additional affirmative defenses as additional facts are learned in the course of discovery.

8    **III.    COUNTERCLAIM AND CROSSCLAIM**

9    Defendants and Counterclaimants BecTech and Arbitech file this Counterclaim against

10   Plaintiffs Cisco Systems, Inc. and Cisco Technology, Inc., and allege as follows:

11   **INTRODUCTION**

12   157.    This Counterclaim is the inevitable result of Cisco's longstanding, concerted efforts

13   to wield its dominant position in the market to insulate itself from competition.  Not satisfied with

14   what the law affords, Cisco has taken aggressive, unprecedented action to ensure that it may

15   destroy the possibility of any competition over the sale of Cisco-branded products.  Cisco's

16   misconduct is far-ranging: it has wielded its exclusive control over essential security and software

17   updates to pick who is, and is not, permitted to sell Cisco goods; it has misrepresented the quality

18   of goods sold by Arbitech and BecTech to dissuade customers from purchasing them; it has

19   wrongfully disclaimed warranty obligations for products sold on the secondary market; and it has

20   threatened law-abiding competitors with outlandish distortions of trademark law as a not-so-subtle

21   threat to stay away from the sale of Cisco products.

22   158.    While each of these practices directly harms BecTech and Arbitech as independent

23   resellers of Cisco products, this dispute is not private in nature.  Instead, independent resellers such

24   as BecTech and Arbitech help generate additional competition in the marketplace for the sale of

25   Cisco goods.  It is customers who reap the ultimate benefit from the presence of alternative sources

26   for these expensive products.  Recognizing this competition, Cisco has threatened independent

27   resellers like Arbitech and BecTech by boldly dismissing the Cisco products they sell as non-

28   genuine, counterfeit goods unworthy of the essential support services that allow them to function.

159.    Accordingly, Counterclaimants, two companies which sell genuine, legally acquired Cisco products, bring this Counterclaim to check Cisco's illegal attempts to crush legitimate competition over the sale of Cisco goods on the open market.

**PARTIES**

160.    Defendant and Counterclaimant BecTech is, and at all relevant times was, a California limited liability company, with its principal place of business in the County of Orange, in the State of California.

161.    Defendant and Counterclaimant Arbitech is, and at all relevant times was, a California limited liability company, with its principal place of business in the County of Orange, in the State of California.

162.    Upon information and belief, Plaintiff and Counter-defendant Cisco Systems, Inc., is, and at all times mentioned herein was, a California corporation, with its principal place of business at 170 W. Tasman Drive, San Jose, California 95134.

163.    Upon information and belief, Plaintiff and Counter-defendant Cisco Technology, Inc., is, and at all times mentioned herein was, a California corporation with its principal place of business at 170 W. Tasman Drive, San Jose, California 95134.

**JURISDICTION**

164.    This Counterclaim arises under the declaratory judgment act, 28 U.S.C. §§ 2201 and 2202, based upon an actual controversy between Counterclaimants and Cisco relating to the applicability of the Lanham Act.

165.    Subject to Counterclaimants' affirmative defenses and denials, Counterclaimants allege that to the extent this Court has jurisdiction over Cisco's claims against Counterclaimants, this Court has subject matter jurisdiction over these counterclaims pursuant to, without limitation, 28 U.S.C. §§ 1331, 1338(a), 1338(b), 2201, and 2202.

166.    This Court has personal jurisdiction over Cisco because Cisco subjected itself to the jurisdiction of the Court through its First Amended Complaint.

167.    To the extent that venue over Cisco's claims is proper, venue is proper in this District for these Counterclaims pursuant to 28 U.S.C. § 1391(b)-(c).

**BACKGROUND**

**The "Authorized Channel Network" and the Secondary Market**

168.    Trademark holders naturally seek to exert control over the sale and purchase of their goods.  But that control can also harm competition, and therefore, consumers.  The law strikes a balance between a trademark holder's interests in controlling its trademark and the public's interest in free competition.  Manufacturers like Cisco are only permitted to control the initial sale of the products they manufacture, and may not wield trademark law to dictate the terms by which their products are sold by other parties.  The "First Sale Doctrine" protects the downstream resale of products from liability.  Accordingly, Cisco is not permitted to forbid the resale of its products.

169.    Cisco has created an "Authorized Channel Network" in which Cisco sells products to entities it refers to as "Authorized Channel Partners" or "Authorized Resellers."  As noted above, however, all persons are authorized under the law to sell lawfully-obtained Cisco products.  Therefore, the "Authorized Channel Network" is not the sole source of Cisco goods in the market, and is itself a highly misleading name.

170.    There also exists a parallel channel of independent resellers who deal in genuine, lawfully obtained genuine Cisco products.  Cisco products enter this "secondary market" when they are resold by persons who decide not to use products they purchased from Cisco and its "Authorized Channel Network."

171.    The secondary market affords resellers in Cisco's "Authorized Channel Network" an alternative outlet to sell products.  These sales return capital to the resellers, who in turn can make further purchases from Cisco.  Consumers benefit from an increased level of competition, resulting in lower prices.

172.    The secondary market therefore operates as an economically efficient mechanism to address supply issues.  On information and belief, Cisco deliberately sells products to resellers and end users whom it knows, or should know, will subsequently resell the products on the secondary market.

173.    Arbitech and BecTech are not part of Cisco's "Authorized Channel Network."  Instead, Arbitech and BecTech procure Cisco products on the secondary market.

- 18 -

**Cisco's Anti-Competitive Interference With the Secondary Market**

174.    Despite the economic role served by the secondary market for Cisco products, Cisco sometimes seeks to interfere with the market's operation.  Because Cisco cannot directly ban the sale of its products by independent resellers like Arbitech and BecTech, Cisco engages in a plethora of tactics to harm the secondary market.

175.    Cisco attempts to leverage its exclusive control of essential software for Cisco products to functionally incapacitate selected secondary market products.  Cisco provides services and critical updates to its switches, firewalls, servers, and other products (collectively, "Cisco products") as part of service agreements known as SMARTnet contracts.  End users acquire these contracts in order to obtain those services.

176.    Although end users are not legally required to purchase SMARTnet contracts for their Cisco products, the services the contracts offer are so integral as to functionally compel end users to do so.  Without SMARTnet contracts, end users will not receive critical software bug fixes, patches and updates (collectively, "updates") that permit Cisco products to serve their intended functions.  These updates are designed to repair malfunctions or defects in the software, or to combat security vulnerabilities.  Consumers who do not update the software on their Cisco products are exposed to significant security and operational risks.  Cisco products with software that has not received the updates may not function properly and may be susceptible to hacking and other security attacks.  Whether to acquire a SMARTnet contract is therefore in practice a false choice.

177.    Because Cisco products run on proprietary operating system software that is essential for the products to function, these updates can only be obtained from Cisco.  It is routine in the technology industry for manufacturers, such as Apple, Hewlett Packard Enterprise, and Microsoft, to make updates available to their consumers for free.  Cisco, in contrast, only provides updates to consumers who have purchased SMARTnet contracts.  Upon information and belief, Cisco does not routinely inform customers at the time of purchase of these stifling limitations.

178.    Thus, many purchasers of Cisco switches only learn after significant investment in Cisco products that they have become beholden to Cisco's demands so long as they wish to

1    continue receiving updates.  There are no commercially reasonable substitutes available for the

2    service and maintenance of Cisco products other than SMARTnet contracts.

3        179.   Purchasers of Cisco products are moreover locked into purchasing SMARTnet

4    contracts for significant periods of time.  For example, ethernet switches are durable, high-fixed

5    cost goods with extended longevity; consumers of these switches commonly intend to use them for

6    many years.  Transitioning from Cisco switches to switches made by another manufacturer is an

7    expensive process, requiring the replacement of significant amounts of hardware and retraining

8    personnel.

9        180.   Cisco does not sell SMARTnet contracts directly to end users of Cisco products in

10   the first instance.  Instead, Cisco sells SMARTnet contracts through its "Authorized Channel

11   Network."  At the time end users purchase SMARTnet contracts from an Authorized Reseller, the

12   contracts are linked to specific Cisco products.  At this time, Cisco is supplied with the relevant

13   product information, including the serial number, part number, and identity of the end user.  Cisco

14   then issues a SMARTnet contract in the name of the specific end user and Cisco product.  Thus, at

15   the time that the SMARTnet contract is purchased and Cisco accepts payment, Cisco is aware of

16   which specific product will be covered by any given SMARTnet contract.

17       181.   Despite the fact SMARTnet contracts originate with Cisco, are paired to genuine

18   Cisco products identified by serial number and end user, and Cisco accepts payment for the

19   SMARTnet contracts, Cisco sometimes selectively, after the fact, and without refunding payment,

20   voids SMARTnet contracts paired with Cisco products that were traded, at some point in the stream

21   of commerce, on the secondary market.  Upon information and belief, Cisco does so in order to

22   dissuade potential customers from entering into legal transactions to acquire genuine, lawfully

23   obtained Cisco products from independent resellers like Arbitech and BecTech.

24       182.   Arbitech and BecTech frequently arrange for their customers to receive SMARTnet

25   contracts for genuine Cisco products they purchase from Arbitech and BecTech.

26       183.   However, Cisco's practice of selectively voiding SMARTnet contracts for Cisco

27   products traded in the secondary market sometimes results in Cisco voiding SMARTnet contracts

28

1   while still retaining the payment for those SMARTnet contracts for Cisco products sold by

2   Arbitech and BecTech.

3          184.    As part of Cisco's anti-competitive interference in the secondary market, Cisco also

4   selectively classifies genuine, lawfully obtained Cisco products as "stolen," "counterfeit" or

5   "scrapped," simply because those products were traded on the secondary market.  As a result, end

6   users or resellers who communicate with Cisco about the status of certain Cisco products are

7   deliberately provided with misinformation.

8          185.    On information and belief, Cisco's deliberate misclassification of products as

9   "stolen," "counterfeit" or "scrapped" is intended to dissuade consumers from purchasing products

10  that were traded in the secondary market.

11         186.    Cisco has also wrongfully denied warranty coverage of genuine Cisco products

12  solely as a result of the fact that those products were sold in the secondary market.  Cisco's

13  ostensible justification for this refusal is that Cisco is unsure whether products sold on the

14  secondary market are genuine.  But this is a farce: Cisco is well-aware that genuine Cisco products

15  are commonly sold on the secondary market.

16         187.    Cisco has at various times asserted that these anticompetitive strictures are

17  necessary in order to mitigate the risk of counterfeit goods being sold to unwitting customers or

18  receiving Cisco services.  These justifications are pretextual and designed to obscure the fact Cisco

19  seeks to minimize competition and exact more control over the market for Cisco products, to the

20  detriment of the consuming public.

21         188.    Secondary market resellers of Cisco products, like Arbitech and BecTech, are highly

22  incentivized to detect and stamp out the sale of counterfeit goods.  While a manufacturer such as

23  Cisco may blame rogue actors when a dissatisfied customer confronts it with a counterfeit product,

24  an independent reseller's own reputation suffers significantly when it sells a customer a counterfeit

25  good.

26         189.    Unsurprisingly, many independent resellers have therefore taken aggressive steps to

27  prevent this from happening.  Arbitech, in particular, has led the secondary market in developing

28  quality control procedures designed to detect counterfeit products and has spent many years

1   improving those procedures.  On several occasions, Arbitech has—of its own accord—alerted

2   Cisco when it has found likely counterfeit Cisco products that have been sold in the secondary

3   market, or called to Cisco's attention other problems in Cisco's supply chain.

4         190.    Moreover, "Authorized Reseller" status is not proof against counterfeit products.

5   On June 23, 2017, Cisco asked BecTech to identify the vendor who had sold it the allegedly

6   counterfeit WS-C2960X-48FPS-L switch at issue in this litigation.  BecTech identified HongKong

7   Sellsi, a Cisco Authorized Reseller, as the vendor in a letter Arbitech sent Cisco on July 5, 2017.

8   Cisco never responded to BecTech's letter.

9         191.    Nor did Cisco terminate HongKong Sellsi's status as a Cisco partner after BecTech

10  informed Cisco in July 2017 that it had bought the switch from HongKong Sellsi—or even after

11  BecTech produced documentation of the sale in May and June 2018.  Indeed, HongKong Sellsi was

12  still an Authorized Reseller only days before Cisco filed its *amended* complaint in August 2018,

13  well over a year after BecTech flagged HongKong Sellsi to Cisco.

14        192.    Despite Arbitech and BecTech's longstanding attempts to assist Cisco in detecting

15  counterfeit Cisco products, Cisco has refused to reciprocate in kind.  In August 2011, for example,

16  a batch of Cisco SFP-10G-SR transceivers Arbitech had purchased failed to pass Arbitech's

17  quality-control standards.  Arbitech took photos of the equipment, sent the photos to Cisco, and

18  requested that Cisco determine whether the products were genuine or counterfeit.  Cisco refused to

19  do so.

20        193.    Cisco's anti-competitive behavior as alleged herein has attracted the attention of

21  government regulators and interested parties worldwide.  Upon information and belief, Cisco has

22  sought to avoid a wholesale dismantling of its anti-competitive practices by incrementally

23  providing relief when compelled to do so.  For example, on December 1, 2008, Multiven, Inc. filed

24  suit against Cisco in this judicial district, Case No. C-08-05391 RS, alleging violations of the

25  Sherman Act and California Business and Professions Code §§ 17200 *et seq*. related to Cisco's

26  refusal to provide updates without purchase of a SMARTnet contract.  Upon information and

27  belief, Cisco settled that case in 2010 by agreeing, *inter alia,* to make updates available to

28  Multiven's customers free of charge.  Similarly, in 2014, when Cisco was under investigation by

1   the Swiss Competition Commission related to Cisco's failure to provide updates and other anti-

2   competitive behavior, Cisco was compelled to make a commitment that updates could be obtained

3   within Switzerland and the European Union without having to purchase SMARTnet contracts, and

4   to implement a series of remedial measures to inform consumers of these policies.  In the United

5   States, however, Cisco continues to pursue the anti-competitive practices alleged herein.

**FIRST COUNTERCLAIM**

**Declaratory Judgment**

**(28 U.S.C. §§ 2201-2202)**

9   194.   Counterclaimants incorporate and reallege Paragraphs 1-193 of its Counterclaims as

10  if fully set forth herein.

11  195.   Counterclaimants seek a declaration of its rights, pursuant to 28 U.S.C. §§ 2201 &

12  2202, that the sale of genuine Cisco products which Cisco has unilaterally deemed ineligible for

13  warranty services, do not violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125.

14  196.   Cisco asserts that the sale of products bearing its trademark which Cisco has

15  unilaterally deemed ineligible for warranty services constitutes trademark infringement in violation

16  of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125.

17  197.   Contrary to Cisco's assertions, the First Sale Doctrine does not permit a trademark

18  holder to transform non-infringing goods into infringing goods simply by fiat.  The sale of genuine

19  goods whose warranty eligibility has been unilaterally revoked by Cisco does not violate the

20  Lanham Act.

21  198.   A real and actual controversy presently exists between the parties to this action

22  which is concrete and justiciable in character, and as to which each party possesses an interest in

23  resolving.

24  199.   Counterclaimants sell, and intend to continue selling, certain other genuine Cisco

25  products which Cisco asserts are ineligible for warranty services once they come into

26  Counterclaimant's possession in the ordinary course of commerce.  Counterclaimants sell, and

27  intend to continue selling, genuine Cisco products.  Unless and until Counterclaimant's sales of

28  genuine Cisco products are deemed to be permissible under United States law, Counterclaimant's

1   ability to sell such products will be wrongfully and unnecessarily impaired, and Counterclaimants

2   will continue to be injured and damaged by this threat.  Accordingly, Counterclaimants seek

3   declaratory relief from this Court.

4        200.    The controversy between Counterclaimants and Cisco warrants relief declaring the

5   rights of the parties pursuant to 28 U.S.C. §§ 2201 & 2202, and finding that the sale of a genuine

6   Cisco products whose warranty eligibility has been unilaterally revoked by Cisco after entering the

7   stream of commerce does not violate the Lanham Act.

8   **SECOND COUNTERCLAIM**

9   **Declaratory Judgment**

10   **(28 U.S.C. §§ 2201-2202)**

11        201.    Counterclaimants incorporate and reallege Paragraphs 1-200 of its Counterclaims as

12   if fully set forth herein.

13        202.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*,

14   Counterclaimants are entitled to judgment from this Court that Counterclaimants' refusal to warrant

15   genuine Cisco products acquired outside of Cisco's "Authorized Reseller Network" violates New

16   York General Business Law § 369-b.

17        203.    A real and actual controversy presently exists between the parties to this action

18   which is concrete and justiciable in character, and as to which each party possesses an interest in

19   resolving.

20        204.    Counterclaimants sell, and intend to continue selling, genuine Cisco products in

21   New York which Cisco asserts are ineligible for warranty services once they come into

22   Counterclaimant's possession in the ordinary course of commerce.  Cisco's claims harm

23   Counterclaimants' ability to sell these products in New York due to wrongfully representing to

24   customers that products sold by Counterclaimants are not eligible for warranties.  Accordingly,

25   Counterclaimants seek declaratory relief from this Court.

26        205.    The controversy between Counterclaimants and Cisco warrants relief declaring the

27   rights of the parties pursuant to 28 U.S.C. §§ 2201 & 2202, and finding that Cisco's refusal to

28

1  warrant genuine products sold in New York based on their purchase or sale in the secondary market

2  violates New York General Business Law § 369-b.

3                              **THIRD COUNTERCLAIM**

4                              **Unfair Competition Law**

5                      **(Cal. Bus. & Prof. Code §§ 17200 *et seq.*)**

6         206.    Arbitech and BecTech incorporate and reallege Paragraphs 1-205 of its

7  Counterclaims as if fully set forth herein.

8         207.    California Business and Professions Code §§ 17200 *et seq*. prohibit acts of unfair

9  competition, which includes any unlawful business act or practice.

10        208.    As detailed above, Cisco has taken a numerous anticompetitive steps designed to

11  afford it a greater level of control over the purchase and sale of Cisco-branded products than the

12  law permits.

13        209.    Cisco has taken these unfair and wrongful acts in order to harm the ability for the

14  secondary market to compete with Cisco.  These practices harm both independent resellers like

15  Arbitech and BecTech, whose ability to compete is impeded, and customers, who are forced to pay

16  increased costs for genuine Cisco products as a result of this artificially deflated competition.

17        210.    Cisco's actions have caused, and unless restrained by this Court, will continue to

18  cause irreparable injury to Arbitech and BecTech.

19        211.    Arbitech and BecTech seek the full restitution by Cisco that is necessary and

20  according to proof to restore any and all property and monies, including interest, acquired by Cisco,

21  and all costs caused to Arbitech and BecTech as a result of Cisco's unlawful and unfair business

22  practices.

23                              **PRAYER FOR RELIEF**

24        WHEREFORE, Defendants BecTech and Arbitech, Inc. pray for judgment and relief

25  against Cisco as follows:

26        a.  declaring that BecTech and Arbitech's sale of genuine Cisco goods whose warranty

27            eligibility has been revoked by Cisco does not violate Section 43(a) of the Lanham

28            Act, 15 U.S.C. § 1125(a);

b.  declaring that Cisco's refusal to warrant genuine products sold in New York violates New York General Business Law § 369-b;

c.  awarding BecTech and Arbitech restitutionary disgorgement;

d.  awarding BecTech and Arbitech their costs and expenses of litigation, including reasonable attorneys' fees; and

e.  such other and further relief as this Court deems just and equitable.

Dated: September 11, 2018                    HUESTON HENNIGAN LLP


                                            By:   */s/ Douglas J. Dixon*
                                                  Douglas J. Dixon
                                                  *Attorneys for Defendants and*
                                                  *Counterclaimants BecTech and Arbitech*

## **JURY DEMAND**

Pursuant to Civ. L.R. 3-6 and Fed. R. Civ. Proc. 38, Defendants and Counterclaimants BecTech and Arbitech, Inc. demand a trial by jury on all issues so triable.


Dated: September 11, 2018                    HUESTON HENNIGAN LLP


                                            By:   */s/ Douglas J. Dixon*
                                                  Douglas J. Dixon
                                                  *Attorneys for Defendants and*
                                                  *Counterclaimants BecTech and Arbitech*

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the above and foregoing document was duly served electronically on all known counsel of record through the Court's Electronic Filing System on the 11th day of September, 2018.

/s/ Douglas J. Dixon
Douglas J. Dixon